887 A.2d 1085

**STROMBERG METAL WORKS, INC.**

v.

**UNIVERSITY OF MARYLAND et al.**

No. 2673, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Dec. 6, 2005.

John H. Michel (Kenneth K. Sorteberg, Huddles & Jones, P.C., on the brief), Columbia, for Appellant.

Dana A. Reed (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellees.

Panel: DAVIS, KENNEY and ROBERT L. KARWACKI (retired, specially assigned), JJ.

DAVIS, Judge.

Stromberg Metal Works, Inc., appellant, appeals from an order of the Circuit Court for Prince George's County, Shepherd, J. presiding, denying appellant's motion for an award of attorney's fees after the Court of Appeals granted appellant access to documents from the University of Maryland and document custodians, John Mitchell and Joyce Hinkle (collectively, hereinafter the University), pursuant to the Maryland Public Information Act (MPIA). Appellant filed this appeal, in which it presents the following issue:

> Whether the circuit court erred as a matter of law and abused its discretion in denying [appellant's] Motion for Award of Attorney's Fees[.]

Because we perceive no abuse of discretion or legal error, we shall affirm the judgment of the circuit court.

## FACTUAL BACKGROUND[1]

This appeal arises from a complaint filed by appellant for the University to produce reports from the University's Department of Architecture, Engineering and Construction, "AEC Reports." Appellant was a construction subcontractor

---

1. The facts recited hereinafter have been extracted, in part, from the opinion rendered by the Court of Appeals in *Stromberg Metal Works, Inc. v. Univ. of Maryland, et al.,* 382 Md. 151, 854 A.2d 1220 (2004).

on a renovation project for the University's Stamp Student Union, located in College Park, Maryland. Specifically, appellant was hired to fabricate and install duct work for the mechanical contractor, John J. Kirlin, Inc., who was a subcontractor for Grunley Construction Co., Inc., the general contractor. During the renovation, Grunley Construction Co., Inc. filed a claim against the University seeking nearly 16 million dollars in additional compensation for its work, which included a claim in the amount of $400,000 for appellant. On August 14, 2002, under the MPIA, codified at § 10–611 *et seq.* of the State Government Article, appellant sought to inspect and copy monthly AEC reports "for and after January 2002." [2]

The University subsequently turned over the AEC Report copies to appellant with information redacted, particularly, "... the dollar amounts for the estimated cost to complete the [Stamp] project, the final cost forecast, the estimated budget variance, forecasted surplus or shortfall, and the current percentage of completion ..." *Stromberg Metal Works, Inc. v. Univ. of Maryland, et al.,* 382 Md. 151, 156, 854 A.2d 1220 (2004). Appellant filed a Complaint to Compel Production of Public Records For Inspection and Copying and Other Relief in November of 2002 to "enjoin the University, Mitchell and Hinkle from withholding the requested information [and], to permit [appellant] to inspect the monthly AEC Reports, ..." *Id.* The University argued that the redacted information in the AEC Reports was protected by executive privilege and the deliberative process privilege and, additionally, constituted confidential commercial information that was also protected, and thus exempt from disclosure. *Id.* at 156–57, 854 A.2d 1220. The circuit court granted the University's motion for summary judgment, and entered judgment for the University.

Appellant appealed and the Court of Appeals granted *certiorari* on its own initiative before briefing or argument in this

---

**2.** Appellant requested other AEC reports from the University on November 29, 2000, August 9, 2001, and September 28, 2001 pursuant to the MPIA, which appellee honored without redaction. *Id.* at 154–55, 854 A.2d 1220.

Court. *Stromberg Metal Works, Inc. v. Univ. of Maryland, et al.,* 382 Md. 151, 156, 854 A.2d 1220 (2004). The Court narrowed its focus to consider "whether the number on the AEC Report for total cost of the Stamp Project is subject to the asserted privileges . . ." *Id.* at 158, 854 A.2d 1220. The Court of Appeals, in its opinion, detailed the AEC reports and their contents.

The AEC Reports were prepared by John Mitchell, an employee in the AEC Department and project manager for the project. He and Joyce Hinkle, a procurement employee in the Department of Procurement and Supply, were custodians of the reports.

The AEC Report is in the form of two spread sheets detailing certain information about all of the University's on-going construction projects and one spread sheet for each project that contains additional information regarding that project. The individual project report for the Stamp project shows such things as (1) the original funding authorization and budget for planning, construction, equipment, and other items, (2) approved funding and budget changes, (3) the current funding and budget for each category of expense, (4) the amount of the budget that is encumbered and liquidated to date, (5) the estimated amount needed to complete the project, (6) the final cost forecast, (7) any budget variance, and (8) the target and actual dates of the start of construction, substantial completion, and project completion. One of the consolidated spread sheets shows the projected budget for the project, the final cost forecast, the amount and percentage that the project is over budget, and how many weeks the project is behind or ahead of schedule.

*Id.* at 154–55, 854 A.2d 1220.

In an opinion filed July 27, 2004, the Court held that the privileges did not apply to the redacted information within the documents appellant requested. *Id.* at 163–66, 854 A.2d 1220. Focusing specifically on executive privilege, the Court concluded, "[t]he records at issue do not contain any diplomatic, military, or security secrets and do not involve the deliberative

process of the President or Governor." *Id.* at 162, 854 A.2d 1220. The Court also pointed to the fact that the AEC reports were prepared for the Director of the AEC, who the Court determined was not directly involved in the decision-making process, a vital factor in upholding the privilege. *Id.* at 163, 854 A.2d 1220.

In regard to the deliberative process privilege, the Court referred to federal courts' construction of the federal Freedom of Information Act, and noted that a communication will be protected if it is "pre-decisional," meaning the records must be "reflecting advisory opinions, recommendations and delibera-tions comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 165, 854 A.2d 1220 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). The Court held the redacted cost figure to be pre-decisional, but, because it was "largely factual in nature" and not indicative of deliberative and decision-making processes, the information could be dis-closed.[3] *Id.* at 166, 854 A.2d 1220. The Court then remanded the matter to the circuit court for it to order the University to allow appellant to inspect the specific information pertaining to the forecasted total cost of the Stamp Student Union project. *Id.* at 170, 854 A.2d 1220.

On September 21, 2004, appellant filed in the circuit court a Motion for Award of Attorney Fees against the University under the MPIA, § 10–623(f) of the State Government Article. Appellant claimed that, since it substantially prevailed in its public information action against the University, it was eligible for and entitled to an award of reasonable attorney's fees and litigation costs in the amount of $62,546.[4] The University

---

**3.** The factual nature of the cost figure information at issue also led the Court to conclude the information was not protected by the confidential commercial privilege because, it "fail[ed] to see how the number would disclose any time-sensitive confidential commercial information" as required by the § 10–618(b) time-sensitive exemption for confidential commercial information. *Stromberg,* 382 Md. at 169, 854 A.2d 1220.

**4.** Appellant explained its calculation to the court at the motions hear-ing:

countered that appellant did not demonstrate it was entitled to an award of attorney's fees and costs.

At the motions hearing, held on December 10, 2004, appellant delineated the factors the court was to consider, and argued:

The first factor being the benefit to the public. This was a significantly large publically [sic] funded construction project. That was the context in which the requests were made. The information was clearly a public record. There's no dispute about that. There never was a dispute that the information was a matter of the public record. What the University had done was requested, or applied erroneously specific exemptions to the Public Information Act.

In this case, the benefit to the public was that there were significant cost and schedule overruns that were being incurred on this project, .... And they were of a particular interest to the University community, to other contractors that were working on the project, as well as the media and the public at large.... Both [Appellant] and the public benefitted from exposing the fiscal problems and the significant schedule overruns that were being incurred on the project. And again, this was a large public construction project that was situated directly in the middle of the University's flagship campus over in College Park....

As to the second factor, that's the nature of [Appellant's] interest in the records. Again, [Appellant's] interest in

---

... [Appellant] spent approximately $33,000 in attorneys fees here at the Circuit Court level over the 11 months that the case resided in the Circuit Court.... There were ... at least two status hearings, a hearing on the cross-motions for summary judgment, pretrial conference, ....

And once the matter was appealed, [Appellant] incurred an addition of $29,500 during the course of the appellate process through the Court of Special Appeals and ultimately up to the Court of Appeals. In total, it was in excess of $62,500, and that is the amount that's now requested in the motion. Now that amount doesn't include anything to advance this motion to recover the fees; it's just the amount to, specifically enforce the act.

these records was legitimate. It wasn't frivolous as the University suggests. [Appellant] was a sub-subcontractor not involved in the loop of the prime contract discussions that were going on under this project.... It had a desire to confirm whether or not the University had sufficient authorized public funding in place for a public construction project that was spiraling out of control.

The project ... now that the records have been revealed, was ... more than 22 months behind schedule ... [and] approaching 30 percent overrun.... And the University is trying to suggest ... now that we have authorized funding after the fact, [Appellant] didn't need to be worried about that at the time, even though it was working on the project and was unsure of how it would ultimately be paid, and, of course, the public's interest in knowing how the management of this project was ongoing....

And then the last factor, ... is whether the University's withholding of public records, ... had a reasonable basis in law,.... In this regard, the Court of Appeals' decision is quite clear.... [W]hen the redacted data was revealed, [the Court held] it was impossible to tell what the individual's views were. And, therefore, the redacted data was not subject to shielding under the deliberative process privilege that was claimed by the University.

... [T]he Court of Appeals unequivocally stated that there was no basis, not my words, the Court of Appeals' words, no basis for mandatory denial existed under Section 106151 of the Public Information Act....

The University contended, in opposition:

The first [factor] I'd like to mention is the nature of [Appellant's] interest in the material.... It's clear here that [Appellant's] primary interest in this material was for its own commercial interest. Throughout all of the pleadings, all the filings, all the memos in this case, right up until the quote to the daily record [sic] after the Court of Appeals came out, [Appellant] has said, "We are interested in this information because we want to know if we're going to get

paid for our work." It is very clear that [Appellant's] interest in this case was commercial. And the case law says typically, in that situation, fees are not awarded, because the whole purpose of awarding fees is to motivate people who don't have a commercial interest to seek public information. . . .

The second factor is the public benefit from the suit. And what [Appellant] is trying to do here is sort of refer generally to the public's interest in the cost of a public project. And I agree absolutely the public has an interest in the cost of the project, but none of that information was withheld here. All that was withheld was this one subjective assessment of the project manager. The factual information has all been produced. . . . There's no public interest in this number [which represents the cost] that changes from month-to-month, which was the project manager's assessment of what the claims might be worth here. . . .

The final factor is [sic] the court should look at whether *the position of the state agency in withholding the information was reasonable, or was it unreasonable?* [5] . . . As far as being legally reasonable, it's clear that just because you lose does not mean you're unreasonable. If that were the case, then an award of fees would be automatic. But the cases, again, the Maryland cases and the federal cases state repeatedly it's not whether you win or lose, it's whether the position you took, the words used are was it a colorable position? Was it a position that was not entirely unjustified? And I would certainly argue here that clearly under those standards the position that the University took was not unreasonable. And I say this by looking at the Court of Appeals' opinion.

---

5. The University's counsel asserted its behavior in honoring appellant's request was reasonable:

> . . . the University produced thousands of documents in response to [Appellant's] requests. They sought legal counsel. They did not arbitrarily withhold information. They withheld this one number that they felt was protected under the deliberative process privilege. Everything's produced promptly. There's no recalcitrants [sic].

The Court of Appeals actually agreed with much of the University's reasoning. It agreed that the document, the information, could be protected by the deliberative process privilege, but agreed that the documents were pre-decisional. It said that—as I said, this was an instance where the project manager is making a subjective assessment of possibility about the claim. And the Court of Appeals said if it could separate out the project manager's opinion, it would. It would allow that to be protected. This whole case turned on one subjective judgment, and that was the court's belief that this number would not reveal the project manager's subjective thinking about the claim.... And under those circumstances, I can't believe that there's any argument that the University did not take a reasonable, colorable, position in this case....

The court issued its Memorandum, Opinion and Order dated January 4, 2005, in which it determined:

Awarding counsel fees, in an action such as this, involve [sic] a two-step process. First, the Court must determine that [Appellant] has substantially prevailed in its action. Here, this Court finds that the requirement has been satisfied and [Appellant] is *eligible* for an award of reasonable attorneys [sic] fees. The second step in the process requires the Court to examine three factors to determine whether [Appellant] is *entitled* to reasonable attorneys [sic] fees. Those factors, set out in *Kirwan v. The Diamondback,* 352 Md. 74, 721 A.2d 196 (1998), are:

(1) the benefit to the public, if any, derived from the suit;

(2) the nature of the complainant's interest in the released information; and

(3) whether the agency's withholding of the information had a reasonable basis in law.

This Court, examining the aforesaid factors in light of the facts in this case, determines that:

1. There is no benefit to the public apart from what [Appellant] derived from this suit;

2. The nature of [Appellant's] interest in the released information is private and pecuniary; and

3. The agency's withholding of the information had a reasonable basis in the law.

Accordingly, the Court declines to award counsel fees to [Appellant].... ORDERED that the Motion for Counsel Fees ... be and hereby is DENIED.

From the court's Memorandum and Order dated January 6, 2005, appellant's timely appeal followed.

## LEGAL ANALYSIS

Appellant contends that the circuit court abused its discretion when it did not award attorney's fees associated with appellant's MPIA request. It claims that the court misapplied the law and misconstrued the applicable factors in determining that appellant should not receive an award. The University counters that the court did not abuse its discretion in that it properly applied the factors to the instant case, and simply found that appellant was not entitled to an award of attorney's fees.

■ "A decision on whether to award counsel fees to an eligible party [under the MPIA] resides in the discretion of the trial judge." *Kline v. Fuller*, 64 Md.App. 375, 388, 496 A.2d 325 (1985). Accordingly, "absent a showing of abuse of that discretion or a predicate erroneous legal conclusion, the determination to award or deny such fees generally will not be disturbed on appeal." *Caffrey v. Dep't of Liquor Control for Montgomery County*, 370 Md. 272, 290, 805 A.2d 268 (2002).

The Court of Appeals summarized the General Assembly's intent in its enactment of the MPIA:

The [MPIA] establishes a public policy and a general presumption in favor of disclosure of government or public documents. [Sections 10–612(a) and (b) of the State Government Article] provide:

(a) *General Right to information.*—All persons are entitled to have access to information about the affairs of

government and the official acts of public officials and employees.

(b) *General construction.*—To carry out the right set forth in subsection (a) of this section, unless an unwarranted invasion of the privacy of a person in interest would result, this Part III of this subtitle shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection.

The statute also contains a broad definition of a "public record." [6] Section 10–613(a) of the Act states that, "[e]xcept as otherwise provided by law, a custodian shall permit a person or governmental unit to inspect any public record at any reasonable time." Sections 10–615 through 10–617 delineate certain public records which are not disclosable, and § 10–618 deals with "permissible denials."

*Kirwan v. The Diamondback*, 352 Md. 74, 80–81, 721 A.2d 196 (1998).

The MPIA provides judicial review as a remedy to any party "[w]henever a person or governmental unit is denied inspection of a public record . . ." Md.Code (1999 Repl.Vol., 2004 Supp.), State Gov't § 10–623(a) ("S.G."). If a complainant files a complaint seeking access to a record, the complain-

---

6. Section 10–611(g)(1) states that a public record:

means the original or any copy of any documentary material that: (i) is made by a unit or instrumentality of the State government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business; and (ii) is in any form, including:
1. a card;
2. a computerized record;
3. correspondence;
4. a drawing;
5. film or microfilm;
6. a form;
7. a map;
8. a photograph or photostat;
9. a recording; or
10. a tape.

*Kirwan*, 352 Md. 74, 80–81, n. 1, 721 A.2d 196 (1998).

ant may be eligible for payment of his/her/its legal costs pursuant to S.G. § 10–623(f), which states:

> If the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred.

Md.Code (1999 Repl.Vol., 2004 Supp.), State Gov't § 10–623(f).

We explained how to reach a determination as to the circumstances under which a complainant substantially prevails in *Kline v. Fuller, supra.* After reviewing the MPIA and case law interpreting the federal Freedom of Information Act, a statute the MPIA "closely parallels," [7] Judge Garrity, writing for the Court, explained:

> ... certain principles have been established in determining whether the threshold of substantial prevailance has been met. Although an actual judgment in claimant's favor is not required, it must be demonstrated that prosecution of the lawsuit could reasonably be regarded as having been necessary in order to gain release of the information and that there was a causal nexus between the prosecution of the suit and the agency's surrender of the requested information. Furthermore, it is not necessary for a litigant to recover all the documents at issue, but rather key documents. Once the court determines that the complainant has substantially prevailed, that litigant becomes "eligible" but not "entitled" to an award of reasonable attorney fees and costs.

*Kline*, 64 Md.App. at 385, 496 A.2d 325.

Once a complainant is found to have substantially prevailed, we identified factors that trial courts should consider when deciding whether to award attorney's fees:

---

7. "The purpose of the Maryland Public Information Act (MPIA), §§ 10–611 to 10–628 ... is virtually identical to that of the FOIA [Freedom of Information Act], 5 U.S.C. § 552 (2003): to provide the public the right to inspect the records of the State government or of a political subdivision. Moreover, the historical development of portions of the MPIA parallel those of its federal counterpart. Under these circumstances, the interpretation of the FOIA by federal courts is persuasive." *Police Patrol Sec. Sys. v. Prince George's County*, 378 Md. 702, 723 n. 8, 838 A.2d 1191 (2003) (Citation omitted.)

These considerations, which are not intended to be exhaustive, include:

(1) the benefit to the public, if any, derived from the suit;

(2) the nature of the complainant's interest in the released information; and

(3) whether the agency's withholding of the information had a reasonable basis in law.

*Id.* at 386, 496 A.2d 325 (citing *Cox v. United States Dept. of Justice,* 601 F.2d 1, 7 (D.C.Cir.1979)). *See also Kirwan,* 352 Md. at 96, 721 A.2d 196 (holding the University's campus newspaper was not entitled to attorney's fees because, despite the fact that the public benefited from the information, the University was justified in withholding certain education records from inspection).

■ In the instant case, there was no dispute between the parties that appellant had, in fact, substantially prevailed in that the Court of Appeals granted it access to documents withheld by the University. Moreover, the circuit court found appellant was eligible to receive an award of reasonable attorney's fees because it had substantially prevailed. Nevertheless, the circuit court did not award attorney's fees to appellant because it found appellant was not entitled to the award. We hold that the circuit court did not abuse its discretion in reaching its conclusion.

As the party that substantially prevailed, appellant had the burden of demonstrating to the circuit court that it was entitled to an award, based on the factors enumerated, *supra,* that entitle one filing a claim to an award. It is apparent from the court's order that it applied the factors we set forth in *Kline* and concluded that, notwithstanding that appellant may have been *eligible* for an award of attorney's fees, it, nevertheless, had the power and discretion to find that appellant was not *entitled* to the award. This conclusion was reached after consideration of all facts and legal arguments, reproduced, *supra,* by the parties.

Appellant asseverates that the court's findings are not very thorough or amount to "bald conclusions." We disagree. The

Court summarily issued its findings based on the legal arguments of counsel and relied, principally, on the fact that the primary motivation of appellant's suit was its pecuniary interest. Appellant's personal interest, rather than the benefit to the public, was the primary force driving the quest for the information at issue. We will not substitute our judgment for that of the circuit court. Because the Maryland MPIA is closely modeled after the federal FOIA case law, we shall review the federal decisions upon which appellant relies.

In *Crooker v. United States Parole Comm'n*, 776 F.2d 366 (1st Cir.1985), appellant Crooker was awarded attorney's fees under the FOIA after succeeding in a suit to gain access to his prisoner presentence report. Although the Court determined the government had a reasonable basis in law for withholding the requested documents, prosecution of Crooker's suit was held to be a substantial benefit to the public. The Court decided that presentence reports were agency records, not court records, and thus, subject to inspection, disclosure, and correction, if necessary, and would, potentially, benefit many individuals on "an issue of importance to society as a whole, *i.e.*, the proper length of time to deprive an individual of personal liberty on account of criminal activities." *Id.* at 368. Notably, the Court also concluded that the nature of Crooker's interest in the documents was "neither commercial nor frivolous," but "was to ensure that the Parole Commission relied on accurate information in making decisions affecting his liberty." *Id.*

The facts in *Crooker* differ significantly from the facts in the case at bar in that the public benefit derived from the disclosure of the cost of the construction project is far more limited and does not have the potential to benefit many individuals on an issue of importance on the scale as that in *Crooker*. There is nothing in the record to suggest that appellant sought knowledge of the cost for any other reason than to ensure that it received proper payment for its work.

Although appellant asserts that the court made "bald conclusions," it cites *Shermco Indus. Inc., v. Sec'y of U.S. Air Force*, 452 F.Supp. 306 (D.C.Tex.1978), *rev'd on other*

*grounds,* 613 F.2d 1314 (5th Cir.1980), where the findings of the United States District Court for the District of Northern Texas mirror the findings of the court below.[8] In *Shermco,* the court awarded counsel fees to the plaintiffs, whom the court found had substantially prevailed. *Shermco,* 452 F.Supp. at 326. They had pursued a private, commercial interest in seeking the records at issue, necessitated principally because of the government's use of unreasonable FOIA exemption claims, and its unreasonable assertion of the FOIA exhaustion doctrine. *Id.* at 326. Appellant contends *Shermco* is persuasive in that, there, the plaintiffs had a private interest in disclosure, as does appellant. Moreover, appellant, insisting that *Shermco* supports its argument for an award of counsel fees, argues that its suit benefited the public, despite its "private self-preservation interest."

The court in *Shermco* was more concerned with the government's unreasonable actions, and it was that unreasonableness that tipped the scales in favor of the decision to award Plaintiffs its requested fees. The record here, specifically, the Court of Appeals' opinion granting disclosure to appellant, demonstrates no such unreasonable actions on the part of the University, particularly in view of its cooperation in honoring previous requests from appellant. The University had endeavored to disclose what it reasonably thought it was legally obliged to disclose. Appellant accurately points out that the

---

8. The court ruled:

> After reviewing the facts of the case and the legal contentions of both sides, I find that the Plaintiffs were pursuing primarily a private interest in seeking the release of the documents, the Plaintiffs were pursuing primarily a commercial interest in seeking release of the records, and the Plaintiffs are a corporation and an individual who do not merit special consideration by the court because of any asserted poor financial status. I also find that the Defendants asserted unreasonable exemption claims in withholding the contractor's statement of facts and the legal opinions sent to the GAO, unreasonably asserted the exhaustion doctrine under the FOIA, the Plaintiffs have almost completely prevailed on the merits, and these findings in favor of awarding the Plaintiffs attorney fees far outweigh any reasons for not awarding fees to the Plaintiffs.

*Shermco,* 452 F.Supp. at 326.

Court of Appeals held there was "no basis" for the University to deny access under the MPIA. It does not follow, however, that the Court implied the University had no reasonable or rational basis in the law to withhold the information. Had the Court of Appeals determined the University acted unreasonably or had no reasonable basis in law for withholding the cost information, it would have expressed that conclusion in its opinion.

Appellant also cites *McDonnell v. United States, et al.,* 870 F.Supp. 576 (D.N.J.1994), for the proposition that a complainant's personal interest in government records will not bar recovery of counsel fees, if the public also benefits from the disclosure. Appellant's assertion is correct; however, *McDonnell* is distinguishable because that case involved the release of information pertaining to the federal government investigation of a 1934 fire on a luxury liner. *McDonnell,* 870 F.Supp. at 578. The *McDonnell* Court emphasized that there was a "mystery" that surrounded this incident, and that "the public benefit from the disclosure of historically significant documents and from the setting of precedent for future FOIA cases [9] weighs significantly in favor of McDonnell." *Id.* at 586.

The courts in *Crooker, supra,* and *McDonnell* found that a clear benefit would enure to the public from the disclosure of records in those cases. No such evidence was presented to the circuit court in the case *sub judice,* to demonstrate that the disclosure of the cost of the subject project would generate considerable benefit to the public and outweigh appellant's personal and commercial interest or the University's reasonable basis for withholding the information. Appellant also

---

9.   The district court also held that:
   ... there is no presumption for withholding witness statements taken during an FBI investigation .... federal law does not authorize the withholding of juvenile records requested under FOIA. [This decision] will put the government on notice that FOIA requires that efforts be made to ensure that the documents produced must be legible, even if this requires additional expense on the part of the plaintiff.
   *McDonnell,* 870 F.Supp. at 586.

cites numerous newspaper articles discussing the project and its problems. The fact that the project garnered headlines does not support the proposition that additional disclosure benefited the public, and, *ergo*, provides a basis for an award of counsel fees under the MPIA.

The circuit court examined the parties' respective motions and memoranda for, and in opposition to, the award of attorney's fees. The court also heard detailed argument from the parties regarding the applicability of the factors to this case. In an exercise of sound discretion, it concluded that appellant was not entitled to attorney's fees. We perceive no error in that conclusion.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**