909 A.2d 663

**STROMBERG METAL WORKS, INC.**

v.

**UNIVERSITY OF MARYLAND, et al.**

**No. 6, Sept. Term, 2006.**

Court of Appeals of Maryland.

Oct. 18, 2006.

122

Mark S. Dachille (Nicole Lefcourt Campbell of Huddles, Jones, Sorteberg & Dachille, P.C., Columbia), on brief, for petitioner.

Dana A. Reed, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, Baltimore), on brief, for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

WILNER, J.

Although subdivided in its brief, the single issue presented by Stromberg Metal Works, Inc. in this appeal is whether the Circuit Court for Prince George's County abused its discretion in denying Stromberg's motion for an award of costs and attorneys' fees under Maryland Code, § 10–623(f) of the State Government Article (SG), which is part of the State Public Information Act (PIA). In an earlier proceeding, we held that Stromberg, which had filed multiple requests for documents under the PIA, was entitled to certain information that respondent, the University of Maryland, had denied. *Stromberg v. University of Maryland,* 382 Md. 151, 854 A.2d 1220 (2004) (*Stromberg* I).

As the alleged prevailing party in that proceeding, Stromberg claims an entitlement to recover costs and attorneys' fees expended in the prosecution of that claim—$62,546. The Circuit Court disagreed and denied the motion, the Court of Special Appeals affirmed that decision, and so shall we.

## BACKGROUND

Most of the facts relevant to Stromberg's request for information under the PIA, upon which its motion for reimbursement of costs and attorneys' fees is based, are set forth in our earlier Opinion and need not be repeated in any detail. Suffice it to say that Stromberg was a sub-subcontractor in the renovation of the Student Union building on the College Park campus of the University. At some point, the project fell a year behind schedule and was approximately $2 million over the then-current revised budget. The general contractor had made a significant, but contested, claim against the University, and Stromberg expressed concern whether there would be sufficient funds available to complete the project. On three occasions, it requested various documents relating to the project, including certain monthly reports prepared by an employee in the University's Department of Architecture, Engineering, and Construction who acted as the project manager. We shall refer to those reports as the AEC Reports. The University turned over the requested documents—thousands of them—including unredacted copies of the AEC Reports through December, 2001.

In August, 2002, Stromberg filed a supplemental request for additional documents, including the AEC Reports for and after January, 2002. Although the University turned over the documents requested in the supplemental application, in contrast to its previous responses, it redacted much of the information in the AEC Reports. That led to a lawsuit filed in the Circuit Court for Prince George's County to enjoin the University from denying access to that information. In response to Stromberg's complaint, the University averred that the redacted information was lawfully shielded under SG §§ 10–615(1) and 10–618(b). Section 10–615(1) *requires* a custodian

to deny inspection of public records that are, by law, confidential or privileged; § 10–618(b) *permits* a custodian to deny inspection of any part of an interagency or intra-agency memorandum that would not be available to a private party in litigation with the governmental unit. As to both sections, the University claimed that the redacted information was protected by some combination of an executive-deliberative process privilege and, for purposes of § 10–618(b), constituted confidential commercial information that would not be available to a civil litigant.

The Circuit Court, agreeing with the University's defenses, granted its motion for summary judgment, and we issued a writ of *certiorari* on our own initiative, prior to any proceedings in the Court of Special Appeals, to consider Stromberg's appeal. We observed, preliminarily, that, although a great deal of information included in the AEC Reports had been redacted, the focus of Stromberg's appeal was on only one item of information—a single dollar figure that constituted the project manager's estimate of the total forecasted cost of the project.[1] We therefore limited our consideration to that one item and found no basis on which to disturb the Circuit Court's ruling with respect to any of the other redacted information. As a further preliminary matter, we rejected Stromberg's argument that the University had asserted the executive-deliberative process privilege in an untimely manner and had thereby waived its right to rely on that privilege.

---

1. As we pointed out in *Stromberg* I, 382 Md. at 154–55, 854 A.2d at 1222, the AEC Report was in the form of two spread sheets, one dealing with all of the University's construction projects and another dealing with each project individually. The second document contained more information about that project than was included in the first. The individual report for the Student Union project included information with respect to (1) the original funding authorization and budget for the project, (2) approved funding and budget changes, (3) current funding and budget for each category of expense, (4) amount of the budget encumbered to date, (5) estimated amount needed to complete the project, (6) final cost forecast, (7) any budget variance, and (8) target and actual dates for start of construction, substantial completion, and project completion. The focus of the appeal was on item (6)-the total forecasted cost of the project.

In examining the defenses asserted by the University with respect to the one item, it was clear that there was a paucity of Maryland law directly bearing on the executive-deliberative process and confidential commercial information issues, and, to resolve those issues, we had to borrow from and analyze decisions interpreting the Federal Freedom of Information Act (FOIA). In the end, we held that the one item of information at issue—the composite dollar figure estimate on each of the monthly AEC Reports—was not protected by either the executive-deliberative process privilege stated in § 10–615(1) or the interagency or intra-agency memorandum exclusion in § 10–618(b).

We concluded that the executive-deliberative process privilege was limited, in this context, to the deliberative process of the highest Executive officials, and that neither the project manager in the University's Department of Architecture, Engineering, and Construction, nor the supervisor to whom the AEC Reports were submitted qualified as such. We also determined that the redacted number in question was almost entirely factual in nature and had no real deliberative quality to it and that it did not constitute confidential commercial information because (1) it was not the kind of time-sensitive information to which that exception is often applied, and (2) the number itself, being a composite figure embodying the project manager's estimates of a variety of factors, including all of the significant pending claims, none of which were individually discernible from the aggregate number, would not reveal anyone's confidential views as to the validity or value of any of the constituent claims or, indeed, as to the future status of the project. Our ultimate judgment was to remand for an order directing the University to permit inspection of that one redacted number on the AEC Reports but to affirm the Circuit Court's decision in all other respects.

Upon remand, the University promptly complied with our mandate. This proceeding commenced when Stromberg filed a motion for an award of over $62,000 in counsel fees and costs incurred in pursuing the action to enjoin the University from denying access to the redacted information. It argued that it

had prevailed in its quest for the information, that the public benefitted from the release of the information which, Stromberg contended, "addressed the general public's interest and concern over the fiscal management on a public construction project that was spiraling out of control," and that the University's redactions "were not reasonably based on the law."

In response, the University essentially conceded that Stromberg had substantially prevailed in its action and was therefore eligible for an award of counsel fees and costs. It averred, however, that, in deciding whether an award should be made, the court needed to consider whether there was any public benefit to the suit, the nature of Stromberg's interest in the released information, and whether the University had a reasonable basis in law for withholding the information. In that regard, the University denied that there was any public benefit derived from Stromberg's suit and maintained, conversely, that the action to obtain the redacted information was solely for Stromberg's pecuniary benefit, in that it was then a participant in a multi-million dollar claim against the University. Finally, the University insisted that, although this Court required that the redacted information be supplied, the University had a reasonable basis in law for initially withholding it.

After considering the evidence submitted in support of and in opposition to Stromberg's motion and the arguments of the parties, the court denied the motion, concluding in a brief memorandum and order that, although Stromberg did substantially prevail in its action:

"1. There is no benefit to the public apart from what the Plaintiff derived from this suit;

2. The nature of the Complainant's interest in the released information is private and pecuniary; and

3. The agency's withholding of the information had a reasonable basis in the law."

The Court of Special Appeals, in Stromberg's appeal from that decision, agreed with the Circuit Court's findings and therefore affirmed. *Stromberg v. Univ. of Maryland,* 166

Md.App. 190, 887 A.2d 1085 (2005). The intermediate appellate court found that no evidence had been presented to the Circuit Court "to demonstrate that the disclosure of the cost of the subject project would generate considerable benefit to the public and outweigh appellant's personal and commercial interest or the University's reasonable basis for withholding the information." *Id.* at 205, 887 A.2d at 1094.

## *DISCUSSION*

Stromberg does not dispute that its eligibility for an award of counsel fees and costs proceeds solely from SG § 10–623(f), which provides:

"If the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred."

That provision was not part of the original enactment of the PIA in 1970. The only sanction then provided was a $100 criminal fine imposable on "any person who willfully and knowingly" violated a provision of the statute. The availability of judicial review and other civil remedies, including the allowance of counsel fees and costs against the governmental entity (rather than against "any person") came in 1978. What is now SG § 10–623(f) was obviously patterned after the analogous provision in FOIA, 5 U.S.C. § 552(a)(4)(E), which Congress added to FOIA in 1974.[2]

---

**2.** Section 552(a)(4)(E) provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." We have recognized, more generally, that the purpose of the Maryland PIA is "virtually identical" to that of the Federal FOIA and that, except where there may be some relevant differences in the two statutes, we may, and should, look to persuasive interpretations of the Federal Act. *See Faulk v. State's Attorney for Harford Co.,* 299 Md. 493, 506, 474 A.2d 880, 887 (1984); *Fioretti v. Board of Dental Examiners,* 351 Md. 66, 76, 716 A.2d 258, 263 (1998); *Police Patrol v. Prince George's County,* 378 Md. 702, 722, n. 8, 838 A.2d 1191, 1203, n. 8 (2003).

■ Both SG § 10–623 and 5 U.S.C. § 552(a)(4)(E) require as a condition of eligibility for an award of fees and expenses that the complainant have "substantially prevailed" in its judicial action seeking the information and both make clear that, even if that condition is met, the making and amount of an award remains discretionary with the court. As we observed in *Kirwan v. The Diamondback*, 352 Md. 74, 96, 721 A.2d 196, 206–07 (1998), however, neither statute sets forth any particular criteria to guide the court in the exercise of its discretion. Following the analysis of the Court of Special Appeals in *Kline v. Fuller*, 64 Md.App. 375, 386, 496 A.2d 325, 331 (1985), we concluded that a court must consider at least three factors:

"(1) the benefit to the public, if any, derived from the suit;

(2) the nature of the complainant's interest in the released information; and

(3) whether the agency's withholding of the information had a reasonable basis in law."

Those factors emanated from the views expressed by Congress when it enacted § 552(a)(4)(E). A rather detailed account of the legislative history of that provision is set forth in *Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704 (D.C.Cir.1977) and *Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C.Cir.1977), and although we need not recount that history in full, some of it is particularly relevant. Section 552(a)(4)(E) was the product of a compromise between S. 2543 and H.R. 12471. The Senate Bill actually contained those factors, although the second one identified in *Kirwan* was separated into two.[3] The Senate Judiciary Committee explained in its Report on the bill (Report No. 93–854, 93rd Congress, 2d Session, to accompany S. 2543, May 16, 1974) that:

---

3. S. 2543 provided, in relevant part, that "[i]n exercising its discretion under this paragraph, the court shall consider the benefit to the public, if any, deriving from the case, the commercial benefit to the complainant and the nature of his interest in the records sought, and whether the Government's withholding of the records had a reasonable basis in law."

(1) Under the first criterion—public benefit—"a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government." *Id.* at 19.

(2) Under the second criterion—commercial benefit to the complainant—a court would usually allow recovery where the complainant was indigent or a nonprofit public interest group but would not allow recovery "if it was a large corporate interest (or a representative of such an interest)." *Id.*

(3) Under the third criterion—the nature of the complainant's interest in the records—a court would generally award fees "if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature." *Id.*

(4) Under the fourth criterion—reasonableness of the non-disclosure—"a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester." *Id.*

Summarizing the interplay of these criteria, the Senate Judiciary Committee cogently observed:

"[T]here will seldom be an award of attorneys' fees when the suit is to advance the private commercial interests of the complainant. In these cases there is usually no need to award attorneys' fees to insure that the action will be brought. The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA. The court should not ordinarily award fees under this situation unless the government officials have been recal-

citrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior."

*Id.*

The House Bill did not include any criteria to guide the court's discretion, and, on that matter, the Senate–House Conference Committee accepted the House version and excluded the criteria from the bill. The Conference Committee was careful to note in its Report, however, that, by not including those criteria, the conferees did not intend to make an award of attorneys' fees automatic or preclude the courts from "tak[ing] into consideration such criteria" in exercising discretion. It pointed out, rather, that "the existing body of law on the award of attorney fees recognize such factors" and that "a statement of the criteria may be too delimiting and is unnecessary." House of Representatives Report No. 93–1380, 93rd Congress, 2d Session, to accompany H.R. 12471, Joint Explanatory Statement of the Committee of Conference, at 10.

The Federal courts, in applying § 552(a)(4)(E), have routinely recognized and given effect to the four criteria that had been included in the Senate Bill, often citing as persuasive authority the Senate Judiciary Committee Report. *See,* for example, *Education/Instruccion, Inc. v. U.S. Dept. of Housing and Urban Dev.,* 649 F.2d 4 (1st Cir.1981); *Chamberlain v. Kurtz,* 589 F.2d 827, 842 (5th Cir.1979), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Detroit Free Press, Inc. v. Dep't of Justice,* 73 F.3d 93, 98 (6th Cir.1996); *Polynesian Cultural Center, Inc. v. N.L.R.B.,* 600 F.2d 1327, 1330 (9th Cir.1979); *Long v. U.S. I.R.S.,* 596 F.2d 362, 370 (9th Cir.1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Anderson v. Secretary of Health and Human Services,* 80 F.3d 1500, 1504 (10th Cir.1996); *Nationwide Building Maintenance, Inc., supra,* 559 F.2d at 710–13; *Weisberg v. U.S. Dept. of Justice,* 745 F.2d 1476, 1498 (D.C.Cir.1984); *Muffoletto v. Sessions,* 760 F.Supp. 268 (E.D.N.Y.1991). So have we. *See Kirwan, supra,* 352 Md. 74, 721 A.2d 196.

Because the University has essentially conceded (or, at least, does not contest) that Stromberg substantially prevailed in the earlier proceeding, we shall not disturb the Circuit Court's finding to that effect.[4] The question, then, is whether the Circuit Court failed to give correct consideration to the relevant factors and thereby abused its discretion in denying an award.

### *Public Benefit*

■ The first factor is whether any public benefit was derived from Stromberg's limited success. The Circuit Court held that there was "no public benefit." Stromberg urges that such a finding is erroneous as a matter of law, because there is *always some* public benefit from judicial enforcement of the PIA, from requiring government agencies to comply with the law. In its conception, *every* judicial victory would place the applicant at least on first base and more likely on second.

■ It is true, of course, in a very general way, that the public is ordinarily benefitted whenever a government agency is required by a court to follow the law, but, as most courts have made clear, that is *not* the focus of provisions like § 552(a)(4)(E) of FOIA or SG § 10–623(f). *See Blue v. Bureau of Prisons,* 570 F.2d 529, 533–34 (5th Cir.1978); *Fenster v. Brown,* 617 F.2d 740, 744–45 (D.C.Cir.1979); *Aviation Data Service v. F.A.A.,* 687 F.2d 1319, 1322–23 (10th Cir.1982); *Simon v. United States,* 587 F.Supp. 1029, 1032 (D.D.C.1984); *Alliance for Responsible CFC Policy, Inc. v. Costle,* 631 F.Supp. 1469, 1471 (D.D.C.1986). The *Blue* court explained that, although doubtless true that the successful FOIA plaintiff necessarily acts in some degree for the benefit of the

---

4. As we pointed out in *Stromberg* I, Stromberg complained initially about virtually all of the many redactions made by the University in the AEC Reports but, in its appeal from the Circuit Court's summary judgment, essentially abandoned its complaint as to everything but the one composite number. As a result, we affirmed the Circuit Court's ruling that Stromberg was not entitled to any of that other information. The only victory won by Stromberg was as to the composite number. Whether Stromberg, in fact, substantially prevailed in its action is not at all clear.

public by bringing the Government into compliance with FOIA and securing to the public the benefits presumed to flow from public disclosure of government information, the Senate Report's reference to disclosure to the press and public interest organizations in its discussion of that criterion, "strongly suggest[ed] that in weighing this factor a court should take into account the degree of dissemination and likely public impact that might be expected *from a particular disclosure.*" *Blue v. Bureau of Prisons, supra,* 570 F.2d at 533 (emphasis added). Thus, the court continued, "this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Id.* at 534. The *Fenster* court followed that approach as well.

Notwithstanding the Senate Judiciary Committee's reference to requests made by news and public interest organizations, we do not believe that the public interest criterion was intended to be, or should be, limited to requests made by those kinds of bodies. The focus of this criterion, which, of course, is not itself determinative but must be balanced against the others, should rather be on the nature of the information requested and, to some extent, although this implicates the third criterion as well, what use the requester intends to and does make of it.

The record here indicates that there was public interest in the delays and cost overruns with respect to the Student Union renovation project. Stories appeared in the public press and in the University's student newspaper regarding the matter, and one or more articles noted this Court's decision in *Stromberg* I. There is nothing in the record, however, to show that Stromberg, or anyone else, ever disseminated, or intended to disseminate, either to the news media or otherwise to the public generally, the composite numbers in the AEC Reports that Stromberg was ultimately successful in obtaining, or that any segment of the public, other than Stromberg, ever indicated any interest in learning of or using those numbers for any public purpose. On this record, therefore, it seems apparent that Stromberg wanted and used the informa-

tion entirely for its own purpose and that there really was no public benefit from the actual disclosure of the AEC numbers beyond the general public benefit presumably accruing from *any* disclosure required by a court.

## Commercial Benefit to Stromberg

### *Nature of Stromberg's Interest in the Information*

 As we did in *Kirwan,* we shall consider these two factors together, because they are usually related and are clearly related in this case. These factors—in a way a "flip side" of the first—emanate directly from the very purpose and function of the fee-shifting provision. As was noted in the Senate Judiciary Committee Report on S. 2543, such a provision was seen by witnesses as "crucial to effectuating the original congressional intent that judicial review be available to reverse agency refusals to adhere strictly to the Act's mandates"—that "[t]oo often, the barriers presented by court costs and attorneys' fees are insurmountable for the average person requesting information, allowing the government to escape compliance with the law." Senate Report No. 93–854, *supra,* at 17. As the Senate pointed out, however, fee-shifting will seldom be warranted "when the suit is to advance the private commercial interests of the complainant," because the self-interest of the complainant in that setting will suffice "to insure the vindication of the rights given in the FOIA." *Id.* at 19. As one court observed, "the public should not be required to finance the investigation of a FOIA plaintiff who makes the request with an eye toward prosecuting some litigation to his own benefit." *Education–Instruccion, Inc. v. U.S. Dep't of Housing and Urban Dev.,* 87 F.R.D. 112, 116 (D.Mass.1980), *aff'd,* 649 F.2d 4 (1st Cir.1981).

As we have just indicated, on the record in this case, it is beyond legitimate dispute that Stromberg sought and used the information in the AEC Reports for its own pecuniary benefit, to assure itself that there would be sufficient funds to complete the project and pay its invoices for the work it performed. At no time, ever, did Stromberg indicate any interest

in the public dissemination of the information, in order to add to the "fund of knowledge" regarding the project. These factors thus weigh heavily against a fee-award.

### *Reasonableness of Initial Non–Disclosure*

Stromberg's argument that the University had no reasonable basis in law for denying inspection of the redacted information rests essentially on the fact that we rejected the University's defenses and directed that the information be supplied. Because we held that the information was not protected by executive-deliberative privilege and was not confidential commercial information, the University, in Stromberg's view, had no colorable basis for denying inspection. We do not agree.

Although this Court had discussed the Constitutionally-derived principle of executive privilege in earlier cases, it was necessary for us to borrow heavily from Federal cases interpreting FOIA to resolve the more precise question of whether the redacted information on the AEC Reports was properly shielded under SG § 10–615(1) or § 10–618(b). There were no clear precedential rulings from this Court prior to our Opinion in *Stromberg* I.

As we have observed, the University had turned over thousands of documents to Stromberg, including, on earlier occasions, unredacted AEC Reports. There is no indication of any intent on the University's part to obstruct or frustrate Stromberg or to withhold information for which there was any public clamor. Rather, guided by the advice of the Attorney General's Office, the University concluded, in response to the supplemental request, that certain information included in the AEC Reports was lawfully subject to shield. It is also of some significance, in judging the reasonableness of the University's position, that the Circuit Court had agreed with that position and entered summary judgment in the University's favor. Although none of these factors, individually, is conclusive or even paramount, when considered together they strongly support a determination that the University's redac-

tion, though ultimately held to be wrong, was not unreasonable.

Upon these findings and a balance of the relevant factors, we conclude that the Circuit Court did not err or in any way abuse its discretion in denying the motion for an award of costs and attorneys' fees and that the judgment of the Court of Special Appeals must be affirmed.

**JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.**