*Sugarloaf Alliance, Inc. v. Frederick County, Maryland*, No. 1617, September Term, 2023. Opinion by Harrell, J. Filed May 1, 2025.

**MPIA – STATUTORY ATTORNEYS' FEES – SUBSTANTIALLY PREVAILING PARTY**

In determining whether a party is a substantially prevailing party in a suit brought under Md. Code, Gen. Prov. § 4-362(f) ("Maryland Public Information Act"), a reviewing court should consider solely the relief that was granted and ignore the merits of any underlying dispute rendered moot on appeal.

**MPIA – STATUTORY ATTORNEYS' FEES – SUBSTANTIALLY PREVAILING PARTY – LODESTAR METHOD**

In determining the amount to be awarded to an eligible and entitled party under Md. Code, Gen. Prov. § 4-362(f), a court may use the "lodestar method" in its formulation, similar to how that method is used in statutory and non-statutory attorneys' fees contexts.

**MPIA – STATUTORY ATTORNEYS' FEES – SUBSTANTIALLY PREVAILING PARTY – LODESTAR METHOD – DOWNWARD ADJUSTMENT**

In applying the lodestar method, a court may consider properly the factors under Md. Rule 2-703(f) in calculating a possible downward adjustment of the product of multiplying the hours expended by counsel of a substantially prevailing party multiplied by the reasonable hourly rate.

Circuit Court for Frederick County
Case No. C-10-CV-22-000369

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1617

September Term, 2023
_____

SUGARLOAF ALLIANCE, INC.

v.

FREDERICK COUNTY, MARYLAND
_____

Shaw,
Ripken,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Harrell, J.
_____

Filed: May 1, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

On 24 June 2022, the appellant, Sugarloaf Alliance, Inc. ("Sugarloaf"), filed a complaint in the Circuit Court for Frederick County, alleging that Frederick County ("the County") violated the Maryland Public Information Act ("MPIA") by failing to produce timely public records that Sugarloaf requested over eight months prior. The County answered Sugarloaf's complaint on 12 August 2022. Shortly thereafter, it sent Sugarloaf twenty responsive records, but withheld purportedly 138 others, claiming they were exempt from disclosure under various privileges.[1] Following an 11 April 2023 bench trial, the court entered an order on June 8 directing the County to (1) submit thirteen of the withheld documents for in camera review, and (2) provide Sugarloaf with the remaining records. The County complied promptly with the court's order.

On 10 August 2023, Sugarloaf petitioned the court for attorneys' fees, costs, and expenses (collectively, "attorneys' fees") in the amount of $48,813.62. At the outset of a hearing on that petition, the court ruled that the County had withheld properly virtually all of the documents reviewed in camera.[2] After receiving evidence and hearing argument on Sugarloaf's petition, the court took the matter under advisement. On 28 September 2023, the court entered a written opinion and order awarding Sugarloaf attorneys' fees in the amount of $25,000.

Sugarloaf noted an appeal on 18 October 2023. It presents a single question for our review, which we rephrase slightly:

---

[1] *But see* n.13, *infra*.

[2] Although the court directed it to produce thirteen documents for in camera review, the County submitted an additional two, both of which the court examined also.

Did the circuit court abuse its discretion or clearly err in awarding Sugarloaf only $25,000 in attorneys' fees?

The County cross-appealed timely. It raises five issues, which we consolidate into one (for reasons we shall explain, *see* pp. 31-36, *infra*)[3]:

Did the circuit court err in determining that Sugarloaf had "substantially prevailed" in its suit and therefore was eligible for an attorneys' fees award under the MPIA?

For the reasons that follow, we shall affirm in part and vacate in part the judgments, and remand for further proceedings.

## BACKGROUND

### The MPIA Requests

Sugarloaf is a non-profit organization, the stated mission of which "is to protect the unique natural and historical aspects of the Sugarloaf Mountain area and its

---

[3] In its brief, the County presented the following issues:

I. Did the Circuit Court abuse its discretion by allowing Sugarloaf Alliance to proceed on its unpleaded and unparticularized challenge to the County's record production and indices?

II. Did the Circuit Court err in finding that the County failed to meet its burden of justifying its "discretionary" denials of responsive records?

III. Did the Circuit Court abuse its discretion by ordering that the County produce all records not withheld on the basis of attorney-client privilege or confidential commercial privilege without conducting an *in camera* review or allowing for supplementation of the Vaughn indices?

IV. Did the Circuit Court err in finding that Sugarloaf Alliance substantially prevailed in this litigation?

V. Did the Circuit Court properly conclude that Sugarloaf Alliance was not entitled to all of the attorneys' fees sought?

2

environment[.]" On 19 October 2021, George Winkler, then Sugarloaf's president, submitted on its behalf two MPIA applications to Assistant County Attorney Andrew J. Ford, the County's MPIA Coordinator. In the first, Sugarloaf requested "[c]opies of any emails, sent or received by [the County's Director of Planning and Permitting], residing on any email servers owned, managed, used, or controlled by [the] County, which contain the word 'Sugarloaf[.]'" (Emphasis omitted.) In the second, Sugarloaf sought:

Copies of any emails, sent or received by Frederick County personnel, residing on any email servers owned, managed, used, or controlled by [the] County, containing any of the following search phrases:

"enhanced mitigation of negative environmental impacts"

"high-quality design elements"

"sectors of biological sciences and technology services"

"existing biological and information technology hub" or

"critical digital infrastructure[.]"

(Emphasis omitted.) Ford confirmed receipt of Sugarloaf's records requests in two emails he sent Winkler later the same day.

### The Pleadings

The County failed to produce the sought-after records within thirty days of receiving Sugarloaf's MPIA applications, thereby denying them constructively. *Compare* Maryland Code (2014, 2019 Repl. Vol.), General Provisions Article ("Gen. Prov."), § 4-203(b)(1) ("A custodian who approves the application shall produce the public record . . . not more than 30 days after receipt of the application."), *with* Gen. Prov. § 4-203(b)(3) ("Failure to

3

produce the public record in accordance with this subsection constitutes a denial of an application[.]"). On 24 June 2022, Sugarloaf filed suit against the County challenging that denial.[4] In its complaint, Sugarloaf alleged, in part:

> To date, no records have been provided to [Sugarloaf], . . . in disregard of [the County's] legal obligations pursuant to the MPIA.
>
> *       *       *
>
> [The County] received [Sugarloaf's] application on October 19, 2021[,] and w[as] required, by law, to produce the records not later than November 18, 2021.
>
> *       *       *
>
> [The County] violated the MPIA in [its] failure to respond as required and [in its] failure to permit inspection of responsive public records.
>
> *       *       *
>
> [The County] failed to properly assert any privilege, confidentiality provision, or MPIA disclosure exception in support of [its] denial.
>
> [The County] ha[s], and continue[s] to, knowingly and willfully refuse to disclose public records to which [Sugarloaf] is entitled and[] failed to petition the [c]ourt for an order to continue the denial as required by [Gen. Prov.] § 4-362(d)(2).[5]

---

[4] Sugarloaf's complaint also named Ford as a defendant. The circuit court found ultimately in Ford's favor. As Sugarloaf does not challenge that judgment, and Ford is not a party to this appeal, we will make no further reference to him as a defendant.

[5] Gen. Prov. § 4-362(d)(2) provides: "An official custodian is liable for actual damages that the court considers appropriate if the court finds that, after temporarily denying inspection of a public record, the official custodian failed to petition a court for an order to continue the denial."

As relief, Sugarloaf sought, *inter alia*, an order requiring the County to produce the requested records, as well as attorneys' fees.[6] In its answer to the complaint, the County denied generally Sugarloaf's allegations and asserted various affirmative defenses.

## The Motions for Summary Judgment

On 12 August 2022, Sugarloaf moved for summary judgment on the ground that the County did not deny violating Gen. Prov. § 4-203 by "fail[ing] to produce responsive public records in response to [its] applications for inspection of public records within thirty (30) days[.]"[7] Four days later, the County sent Sugarloaf twenty documents responsive to its records requests, as well as two "Vaughn indices" identifying an additional 138 withheld documents and invoking various privileges as to each.[8] On September 12, the County filed a cross-motion for summary judgment seeking dismissal of Sugarloaf's claims. In an accompanying memorandum, the County attributed the untimeliness of its MPIA response to an "administrative oversight" and argued "that the case [wa]s moot because the County provided [Sugarloaf] with the requested records."

On 2 November 2022, the circuit court held a hearing on the parties' cross-motions for summary judgment. Sugarloaf argued that, because the denials of its records requests

---

[6] Sugarloaf requested also actual and statutory damages.

[7] Sugarloaf filed its motion for summary judgment on the same date the County filed its answer to Sugarloaf's complaint.

[8] "A 'Vaughn index' is a list of documents in the government's possession, setting forth the date, author, general subject matter, and claim of privilege for each document claimed to be exempt from disclosure. The name is derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)." *Glass v. Anne Arundel Cnty.*, 453 Md. 201, 213 n.11 (2017) (cleaned up).

were all discretionary, the County bore the burden of establishing that disclosure of the withheld documents would be contrary to the public interest. According to Sugarloaf, the County failed to meet that burden, and "any record that does not reflect a mandatory denial should [therefore] be ordered released by th[e] [c]ourt."

For its part, the County claimed that its responses to Sugarloaf's MPIA requests, although untimely, were otherwise "complete and adequate." The County stressed that Sugarloaf had identified neither which withheld documents warranted disclosure nor challenged specifically the County's stated reasons for withholding them. If Sugarloaf was dissatisfied with its response, the County asked that it either "communicate such with us[] or amend [its] complaint to . . . reflect as much." Finally, the County asserted that the Vaughn indices contained sufficient information from which the court could "determine whether the discretionary exceptions listed there[in] . . . apply." If the court concluded otherwise, the County requested alternatively that it review the withheld records in camera.

After hearing arguments, the court proposed ordering Sugarloaf to file exceptions to the Vaughn indices and requiring "the County [to] respond in a timely fashion[.]" Although the County was amenable to the idea, Sugarloaf opposed it, arguing that the County should not be afforded yet another opportunity to meet its burden of proving that the withheld records were exempt from disclosure. Following a brief recess, the court reconvened and denied the parties' motions for summary judgment. Those oral rulings were memorialized in written orders entered on 2 November 2022.

Undeterred by the court's ruling, the County filed, on 26 January 2023, a renewed motion for summary judgment, wherein it reiterated essentially the arguments presented in its prior motion. On 24 February 2023, the court denied that motion, without a hearing or an explanation. Eleven days later, the County filed a pretrial statement, in which it asserted:

> If [Sugarloaf] contends that the County's responses are insufficient, it needs to amend its [c]omplaint, asking the [c]ourt to review the Vaughn [indices] and/or documents to determine whether non-disclosure was appropriate. To date, [Sugarloaf] has not done so. Rather, it appears that [Sugarloaf] wants the court to find that the County intentionally violated the [M]PIA.

Sugarloaf did not file an amended complaint. The case proceeded to trial on its original complaint.

### The Bench Trial

The court conducted a bench trial on 11 April 2023. The County called Ford as its sole witness. He testified that, upon receiving Sugarloaf's MPIA applications on 19 October 2021, he brought the requests to the attention of the County Attorney, Byron Black.[9] Mr. Black, in turn, advised Ford that Stronghold, Inc., the owner of Sugarloaf Mountain, had "reached out to the County Executive" and scheduled a meeting to discuss "the Sugarloaf [P]lan." Conflating Stronghold with Sugarloaf, Ford assumed mistakenly that the MPIA requests and the meeting "were related." Black advised subsequently Ford that the meeting "had gone well, that [Stronghold] had had all [of its] questions answered, and that [it] would be in touch if [it] needed anything else." Notwithstanding the favorable

---

[9] Byron Black shares a surname with Stephen Black, Sugarloaf's current president. When necessary for purposes of clarity, we will refer to each by their first and last names.

report, Ford continued to coordinate with the County's Interagency Information Services Division in an effort to respond to Sugarloaf's MPIA requests.

Ford testified further that, in late October 2022, he learned that approximately 1,500 "errors [had been] generated because of the nature of the [word] search[,]" all of which "would have to be resolved one by one." News of those errors led Ford to suspend processing Sugarloaf's requests. He explained:

> [A]t that point, I was becoming a little frustrated and disheartened that I was not going to be able to provide a response of how many records we had because I just didn't know the answer. . . . I felt like I didn't want to upset the apple cart. A meeting had gone well, they got, in my mind, the answers had all been given, and [Sugarloaf would] be back in touch if [it] needed anything else. So[,] that's where I made the mistake of simply not documenting anything back to Mr. Winkler.

According to Ford, he and Sugarloaf did not have any further contact regarding the requested records until it filed suit. Ford affirmed, however, that the County began "assembling documents in response to the MPIA request" after being served with Sugarloaf's complaint. He denied participating in either the decision to withhold certain documents or the process of assembling those the County chose to produce. He was unable, therefore, to either identify who had examined the records or explain "the reasoning behind the refusal to provide . . . records to Sugarloaf[.]" Ford confirmed, however, that the responsive records were "reviewed internally," first by the Office of the County Attorney "and then . . . with the County Executive's [O]ffice[.]"

After the close of the County's case (which went first), but before presenting its own, Sugarloaf moved for judgment as a matter of law, asserting that the County had not

8

presented any evidence "as to why [the] documents [at issue] were withheld[.]" Absent such evidence, Sugarloaf argued the County could not satisfy its burden of showing "that any of the [MPIA] exemptions appl[ied]." With respect to the Vaughn indices, Sugarloaf continued:

> The description of the exemptions in the Vaughn Indices themselves are as conclusory as they g[e]t. The reasons listed therein do not give any particularized information. It's merely boilerplate. And it's boilerplate on specific exemptions where you would have to say, ["N]o, this would harm the public because of X specific reason,["] not a general ["]county employees deserve to communicate in private[."]

Denying Sugarloaf's motion, the court reasoned that, because the Vaughn indices had not yet been introduced into evidence, it was unable to review the County's justifications for withholding the documents at issue.[10]

During its case-in-chief, Sugarloaf called its president, Stephen Black, as its only witness. Black testified that he became affiliated with Sugarloaf in September 2021, after learning that the County was engaged in a plan for development of the Sugarloaf Mountain area. The following month, Black assisted Winkler in preparing the two MPIA applications at issue.[11] He affirmed that, upon submitting those requests in October 2021, Sugarloaf received two emails confirming the County's receipt of them. According to Black, however, the County neither produced timely the requested documents nor provided

---

[10] Although the court denied initially Sugarloaf's motion for judgment, it announced subsequently that it would take the matter under advisement. It does not appear, however, that the court made any further reference to the motion at trial.

[11] Black replaced Winkler as Sugarloaf's president in December 2021.

Sugarloaf with any updates regarding the requests until after Sugarloaf filed suit.[12] Finally, he denied that "the records . . . Sugarloaf ultimately received from [the] County . . . were all of the records that [had been] requested[.]"

After the close of the evidence, the court noted that the Vaughn indices had not been admitted into evidence yet and asked whether either party objected to it "taking judicial notice of [them.]" Counsel for both parties answered in the negative. The Vaughn indices reflect that, of 158 records the County deemed responsive to Sugarloaf's MPIA requests,

---

[12] Black acknowledged that he communicated with members of the County Attorney's Office "[a]bout other matters" after the MPIA requests were submitted. He denied, however, that they discussed the outstanding MPIA requests during those conversations.

it produced only twenty.[13],[14] The County claimed that all 138 withheld documents were exempt from disclosure under the executive and deliberative process privileges. Additionally, the County asserted that (1) 120 of the documents qualified as inter- or intra-agency records, (2) eleven were protected by attorney-client privilege, and (3) four contained confidential commercial information.

In its closing argument, the County reasserted that Sugarloaf's failure to file an amended complaint identifying each perceived deficiency in the Vaughn indices was fatal to its case. Sugarloaf, in turn, argued that the Vaughn indices did not supply sufficient facts

---

[13] Our review of the Vaughn indices revealed the following summary:

Vaughn Index I: 66 Total Entries
    Disclosed: 19 (# 2, 4-5, 8, 10-14, 16-17, 23, 28, 30, 34, 38, 45, 49, 58)
    Withheld: 47
        Bases for Withholding:
            Deliberative Process: 47
            Executive Privilege: 47
            Interagency or Intra-agency Record: 37

Vaughn Index II: 92 Total Entries
    Disclosed: 1 (# 56)
    Withheld: 91
        Bases for Withholding:
            Deliberative Process: 91
            Executive Privilege: 91
            Interagency or Intra-agency Record: 83
            Confidential Commercial Information: 4 (# 9, 64, 71, 77)
            Attorney-Client Privilege: 11 (# 34, 64, 81, 82, 83, 84, 85, 86, 87, 90, 91)

[14] In its written opinion, the circuit court found that there were 156 responsive records, 136 of which were not produced. By our count, however, the Vaughn indices identify 158 responsive records, 138 of which were withheld.

from which the court could determine whether the undisclosed documents were withheld properly. After hearing closing arguments, the court took the matter under advisement.

**The Court's Ruling on the Merits**

On 8 June 2023, the court reconvened to deliver its oral opinion. After making factual findings consistent with the evidence presented at trial, the court rejected expressly the County's contention that Sugarloaf "was required to amend its complaint to reflect . . . that it was dissatisfied with non-production of certain records and/or the . . . Vaughn indices[.]" The court explained:

> In determining whether the chosen method is adequate[,] . . . the [c]ourt is required to consider judicial economy, the conclusory nature of any agency affidavits, bad faith on the part of the agency, disputes concerning the contents of the documents, whether the agency has proposed in camera inspection, and the strength of the public interest in disclosure, which the [c]ourt has considered here.
>
> Here[,] the agency has disclosed the document creators, recipients, dates sent, and for most items a conclusory statement as to the privilege asserted. It is noted that the vast majority of privileges asserted by the County for denial of production involve either the deliberative process, executive privilege, or interagency/intra-agency records, or some combination thereof.
>
> However, several others also involve the commercial privilege exception and the attorney-client privilege. Other than attorney-client and commercial privilege exceptions, these are discretionary exceptions requiring the County to, among other things, persuade the [c]ourt that disclosure would be contrary to the public interest.
>
> The [c]ourt concludes that it does not have enough information to reach that conclusion.
>
> \*       \*       \*
>
> [W]hile the County's Vaughn indices provide some background information on preparation and distribution of the documents, in the [c]ourt's view they

12

fail to provide sufficient information about the persons among whom they were circulated, whether the documents were indeed vital to any agency decisions that might have been under consideration, and perhaps most importantly, whether any factual material existed within those documents that could have been disclosed after sanitizing . . . [them].

\*     \*     \*

For those reasons, and subject to the following exceptions, the [c]ourt is going to order production of all previously undisclosed documents to [Sugarloaf].

Now, with regard to the items claimed to be subject to attorney-client privilege, and confidential commercial information privilege, the [c]ourt believes that an in-camera inspection should be made by it in order to make a responsible decision on those exemptions.

\*     \*     \*

I will take a look at them. I will determine whether or not they meet any of the exemptions, and then we'll have to convene again.

The court memorialized its oral ruling in a written order entered that same day.

On 20 June 2023, the County filed a motion for reconsideration, which the circuit court denied on July 25. The County did not seek a stay of, or appeal at that time from, the court's judgment. Instead, it complied with the court's order to produce the records that had been determined by the court to have been withheld wrongfully.

**Sugarloaf's Petition for Attorneys' Fees**

On 10 August 2023, Sugarloaf petitioned the circuit court for attorneys' fees in the amount of $48,813.62. In the petition, Sugarloaf asserted, among its averments, that it had "substantially prevailed" in the underlying action and was therefore eligible for an award of attorneys' fees under the MPIA. The County filed an opposition to Sugarloaf's petition

13

on August 28. In its opposition, the County argued that, because Sugarloaf had not presented "any evidence that prosecution of this suit was necessary for [it] to receive the records it initially requested, it cannot be said that [Sugarloaf] substantially prevailed in this matter."

On 6 September 2023, the circuit court held a hearing on Sugarloaf's petition. At the outset, the parties advised the court that, to the best of their knowledge, the County complied with the June 8th order requiring it to produce all previously withheld documents, except for the fifteen records the court reviewed in camera. Based on its in camera review, the court ruled that fourteen of the fifteen records were withheld properly. The court noted, however, that it appeared as though the County provided nevertheless Sugarloaf with several of them.[15] With these preliminary matters resolved, the court turned to the issue of attorneys' fees.

In support of its petition, Sugarloaf called Stephen Black as its sole witness. He testified that Sugarloaf submitted its MPIA requests in response to perceived furtive efforts on the part of the County to modify "the Sugarloaf [P]lan," which he described as a "zoning" and "preservation plan" for the Sugarloaf Mountain region.[16] According to Black, the proposed change would "redraw the boundaries of this . . . area to remove a chunk of

---

[15] The court appears to have stated mistakenly that there were "13 items . . . for which a claim of privilege of either confidential commercial information or . . . attorney-client privilege were asserted."

[16] Among other things, Black averred that secret meetings had taken place among "members of Amazon Web Services, Amazon, Inc., local developers, . . . attorneys and land planning consultants for local developers, and [C]ounty staff."

ground off . . . the eastern side of Sugarloaf Mountain to the west . . . of I-270." He

recounted that he learned later that the County was attempting to modify the Sugarloaf Plan

"to carve out ground from the Sugarloaf region for heavy industrial development[,]" to wit,

an "Amazon development project."

In addressing the public utility of the previously withheld records, which Sugarloaf

posted online, Black testified:

> [A]s a direct result of the released documents, we now have a very accurate
> understanding of the sites and the parts of Southern Frederick County that
> were under consideration for this heavy industrial development . . . . We
> understand the depth of [the] [C]ounty staff's involvement in repeated
> meetings in drafting . . . ordinances. We understand now the concept of the
> critical digital infrastructure floating zone as the mechanism that was going
> to be used to im[plement] these industrial facilities into otherwise very rural
> areas. We understand the time lines that this was all supposed to occur on.
> We understand now from these documents that public involvement, public
> comment, public participation was going to be . . . explicitly pushed to the
> side in favor of getting this project through no matter what the opposition
> was. I think all of these things we would not have known were it not for these
> released records.

Although the Sugarloaf Plan was "enacted with a return to the original boundary [without]

land removed for the Amazon project[,]" Black explained that "the data center industry"

remained "interested in ground in Frederick County." He added that the documents

Sugarloaf obtained were "useful to inoculate . . . the government and the citizenry . . .

against th[e] same kind of action being taken by some other entity in the . . . immediate

future." According to Black, these records stood in stark contrast to those the County

produced initially, which he described as "already publicly available" and containing

"essentially no additional information on what had been going on in secret."

15

The circuit court took the matter under advisement. On 8 September 2023, two days after the hearing, Sugarloaf filed a supplemental petition for attorneys' fees, seeking an additional $6,648. In its supplemental petition, Sugarloaf attributed the additional fees to (1) "the preparation for and attendance at the [September 6] hearing[,]" (2) "the preparation and filing of the original [attorneys' fees] [p]etition," and (3) "other matters, performed on August 9 and 10, 2023, . . . which had not . . . been invoiced as of the filing of th[at] . . . [p]etition[.]"

## The Attorneys' Fees Award

On 28 September 2023, the circuit court entered a written opinion and order awarding Sugarloaf attorneys' fees in the amount of $25,000. As a threshold matter, the court found that "the filing of this lawsuit was necessary to obtain the documents sought[,]" reasoning:

> [T]he court does not believe that if [Sugarloaf] had brought the matter to the attention of the [C]ounty prior to filing suit[,] such action would have resulted in production of the records sought. No reason has been advanced to suggest that those records ordered to be produced on June 8 would have been produced without protracted struggle. If that were the case, the [C]ounty would have produced them when suit was filed. This is especially so in light of the court's review, above, of the content of certain key documents. Nor does the court believe those documents would have been revealed after rezoning had occurred, absent further pursuit by citizen requestors.

Because the suit against the County was necessary to compel it to release the records at issue, the court concluded that Sugarloaf had "substantially prevailed" in its suit and was therefore eligible for an attorneys' fees award under the MPIA.

16

In assessing whether Sugarloaf was entitled to, as well as eligible for, an award of attorneys' fees, the circuit court considered whether releasing the records would serve the public interest and found "significant public benefit to the disclosure of these documents." The court noted that the withheld documents "suggest that while purportedly open meetings were taking place regarding the Sugarloaf Plan, the [C]ounty was courting [Amazon Web Services] behind the scenes, apparently under a non-disclosure agreement." The court concluded that Frederick County citizens' ability to evaluate their local government's conduct was "certainly a matter of public concern."

Although it found that the $48,813.62 in attorneys' fees Sugarloaf accrued was "customary and reasonable[,]" the circuit court declined to grant it so substantial a sum. Instead, it awarded Sugarloaf attorneys' fees in the amount of $25,000. The court explained why it discounted Sugarloaf's request:

> [T]here were 14 documents that were justifiably withheld by [the County] on the grounds of either attorney-client or confidential commercial information privilege. Unfortunately, some of those documents have already been produced because the [C]ounty in its *Vaughn* indices also sought to withhold them based upon the assertion of discretionary privileges which were not accepted by the court.
>
> The court has the discretion to award attorneys' fees in an amount that it believes appropriate. It has taken into account that a substantial portion of the documents produced were drafts, cover emails, and redundant in nature. It also ascribes no evil motive to [C]ounty officials, some of whom were uncomfortably caught in the middle of an attempt to land a large national corporation who might enhance the [C]ounty's stature and add to its tax base, while maintaining the confidentiality [Amazon Web Services] required. Unfortunately for the [C]ounty, during this quest, some [C]ounty citizens questioned the transparency of the process and ultimately acquired important information that was of interest to the public. As the [C]ounty has pointed out in its submission, ultimately – and unfortunately – the citizens of

17

Frederick County will bear the burden of an award of attorneys' fees, an irony that is not lost on the court.

In a second order entered that same day, the court denied Sugarloaf's supplemental petition as untimely.[17] These appeals followed.

We will include additional facts as relevant to our discussion of the issues presented.

## DISCUSSION

### I.

We begin by addressing the County's cross-appeal. To be eligible for attorneys' fees under the MPIA, a complainant must have "substantially prevailed" in its lawsuit. The County contends that the circuit court erred in finding that Sugarloaf met this eligibility requirement. It advances two arguments in support of that contention. Before grappling directly with those arguments, however, we set forth the applicable law.

### A. Eligibility for Attorneys' Fees

General Provisions § 4-362 governs judicial review of the denial of an MPIA request and provides, in pertinent part: "If the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees . . . that the complainant reasonably incurred." Gen. Prov. § 4-362(f). In other words, "[t]o be eligible for an award of attorney fees . . . a claimant must establish the threshold requirement that as a result of the action he or she has

---

[17] Specifically, the court's order reads: "This request should have been presented at the [6 September 2023] hearing."

18

substantially prevailed in gaining the information sought." *Kline v. Fuller*, 64 Md. App. 375, 381 (1985).

In *Kline*, the Court was called upon to interpret the phrase "substantially prevailed" as used in Article 76A, § 5(b)(6) of the Maryland Code, a predecessor statute to Gen. Prov. § 4-362(f). We read that fee-shifting provision consistent with its federal counterpart in the Freedom of Information Act ("FOIA"), which then provided: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."[18] 5 U.S.C. § 552(a)(4)(E). Based on our review of federal case law applying

<hr>

[18] Following our decision in *Kline*, Congress passed the OPEN Government Act of 2007, thereby amending 5 U.S.C. § 552(a)(4)(E) to clarify the meaning of "substantially prevailed." As amended, the provision now provides: "For purposes of this subparagraph, *a complainant has substantially prevailed if the complainant has obtained relief through* either -- (I) *a judicial order*, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii) (emphasis added). By defining "substantially prevailed" in this way, Congress codified effectively existing case law holding that a complainant "substantially prevails" under the pre-amendment fee-shifting provision by obtaining court-ordered relief on the merits of his or her claim. *See Edmonds v. FBI*, 417 F.3d 1319, 1326 (D.C. Cir. 2005) (holding that the plaintiff substantially "'prevailed' in her FOIA action by obtaining court-ordered, expedited processing of her request, which culminated in the release of 343 nonexempt pages"); *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 456-57 (D.C. Cir. 2002) ("*OCAW*") (holding that plaintiffs are eligible for attorneys' fees in FOIA actions when a court awards them "some relief . . . in a judgment on the merits" (internal quotation marks and citation omitted)); *see also Meinecke v. Thyes*, 963 N.W.2d 816, 821 (Wis. Ct. App. 2021) ("[P]rior to the amendment to FOIA in 2007 that explicitly provided the definition of 'substantially prevailed' to include relief through judicial order, courts held the same when some records were ordered produced." (footnote omitted)).

19

that provision, as well as the language of the MPIA, we identified the following principles

for "determining whether the threshold of substantial prevailance has been met":

> Although an actual judgment in claimant's favor is not required, it must be demonstrated that prosecution of the lawsuit could reasonably be regarded as having been necessary in order to gain release of the information and that there was a causal nexus between the prosecution of the suit and the agency's surrender of the requested information. Furthermore, it is not necessary for a litigant to recover all the documents at issue, but rather key documents. Once the court determines that the complainant has substantially prevailed, that litigant becomes "eligible" but not "entitled" to an award of reasonable attorney fees and costs.

*Kline*, 64 Md. App. at 385.[19] *Accord Stromberg Metal Works, Inc. v. Univ. of Md.*, 166 Md.

App. 190, 201 (2005), *aff'd*, 395 Md. 120 (2006). In summation, a complainant

---

[19] The principles summarized in *Kline* continued to govern the award of attorneys' fees in FOIA cases for the fifteen years following the decision in that case. In *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001), however, the Supreme Court of the United States rejected what had become known as "the catalyst theory" for attorneys' fees eligibility. Under that theory, "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601. In interpreting the fee-shifting provisions of the Fair Housing Amendments Act of 1988, the Supreme Court held that a plaintiff only qualifies as a "prevailing party" if there has been a "judicially sanctioned change in the legal relationship of the parties[,]" as "where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree[.]" *Id.* at 605 (internal citation omitted).

In *OCAW*, 288 F.3d at 454, the United States Court of Appeals for the District of Columbia Circuit applied *Buckhannon*'s interpretation of "prevailing party" to FOIA's fee-shifting provision. Accordingly, the Court held that "in order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." *Id.* at 456-57 (quoting *Buckhannon*, 532 U.S. at 603). The Second Circuit followed suit, and in *Union of Needletrades, Industrial and Textile Employees v. INS*, 336 F.3d 200, 206 (2d Cir. 2003), abrogated its prior holding in *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir. 1976), one of the four federal cases on which the *Kline* Court had relied.

(continued . . . )

Approximately three months after the decision in *OCAW*, the Supreme Court of Maryland issued its opinion in *Caffrey v. Dep't of Liquor Control for Montgomery County*, 370 Md. 272 (2002). Rather than follow the D.C. Circuit Court's lead in rejecting "the catalyst theory," however, the Maryland Supreme Court adopted the pre-*Buckhannon* test for attorneys' fees eligibility summarized in *Kline*. The Court wrote:

> "[A]lthough *an actual judgment in claimant's favor is not required*" to meet the "threshold of substantial prevailance," "it must be demonstrated that prosecution of the lawsuit could reasonably be regarded as having been necessary in order to gain release of the information," that "there was a causal nexus between the prosecution of the suit and the agency's surrender of the requested information," and that the complainant recovered "key documents."

*Caffrey*, 370 Md. at 299 (emphasis added) (quoting *Kline*, 64 Md. App. at 385). Thus, although "the catalyst theory" fell out of favor federally, it remains alive and well in Maryland MPIA cases. *See Stromberg Metal Works, Inc. v. Univ. of Md.*, 166 Md. App. 190, 201 (2005), *aff'd*, 395 Md. 120 (2006).

Apparently, "[t]he strict *Buckhannon* rule drew some criticism for allowing the government to stonewall valid FOIA claims but prevent an award of attorney fees by disclosing the documents at the last moment before judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011). Agencies could "force FOIA plaintiffs to incur litigation costs while simultaneously ensuring that they could never obtain the merits judgment they needed to become eligible for attorney fees." *Id.* Congress responded to mounting concerns over this paradigm by enacting the OPEN Government Act of 2007. Among other things, the OPEN Government Act amended FOIA's attorney fees provision, 5 U.S.C. § 552(a)(4)(E), to include a definition of "substantially prevailed." As amended, 5 U.S.C. § 552(a)(4)(E) provides, in pertinent part:

> (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--
>
> (I) a judicial order, or an enforceable written agreement or consent decree; or
>
> (II) *a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial*.

(Emphasis added.) As the D.C. Circuit Court explained subsequently, "[t]he purpose and effect of this law . . . was to change the 'eligibility' prong back to its pre-*Buckhannon* form[,]" such that plaintiffs could "qualify as 'substantially prevail[ing],' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims." *Brayton*, 641 F.3d at 525. Thus, the OPEN Government Act reharmonized federal

(continued . . . )

substantially prevails under the MPIA if (1) the lawsuit "'could reasonably be regarded as . . . necessary'" to obtain the requested information; (2) "'there was a causal nexus between . . . the suit" and the disclosure; and (3) "the complainant recovered 'key documents.'" *Caffrey v. Dep't of Liquor Control for Montgomery Cnty.*, 370 Md. 272, 299 (2002) (quoting *Kline*, 64 Md. App. at 385). Whether a complainant "substantially prevailed" within the meaning of Gen. Prov. § 4-362(f) is primarily a question of statutory interpretation, which we review de novo. *See Giant of Md., LLC v. Taylor*, 221 Md. App. 355, 368 (2015) ("'A determination of prevailing party status is a question of law, which an appellate court reviews *de novo*.'" (cleaned up) (quoting *Md. Green Party v. State Bd. of Elections*, 165 Md. App. 113, 128 (2005), *cert. denied*, 390 Md. 501 (2006))); *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004) ("When the trial court's order 'involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review.'" (quoting *Walter v. Gunter*, 367 Md. 386, 392 (2002))); *see also Davy v. CIA*, 456 F.3d 162, 164 (D.C. Cir. 2006) ("We review whether [the plaintiff] was eligible for attorney fees—that is, whether he 'substantially prevailed'—de novo because it rests on an interpretation of the statutory terms that define eligibility for an award." (some internal quotations marks and citations omitted)).

---

and Maryland law with respect to eligibility for an attorneys' fees award under FOIA and the MPIA, respectively.

Relying on *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 (D.D.C. 2016), the County contends that the court "erred in finding that the instant lawsuit was *necessary* for Sugarloaf . . . to gain release of the requested records." (Emphasis added.) This determination was unfounded, the County argues, "because Sugarloaf . . . never attempted to resolve the matter any other way[,]" e.g., by "follow[ing] up with the County, respond[ing] to [its] production, or articulat[ing] its concerns about the . . . Vaughn indices[.]"

Sugarloaf responds that the County's "refusal to release the requested documents for almost two years of contested litigation" supports the court's finding "that the records requested by Sugarloaf . . . would not [have] been produced without a protracted struggle." (Internal quotation marks omitted.) Quoting the circuit court, Sugarloaf maintains that if the County was willing to release the records, it "'would have produced them when suit was filed'" rather than "withhold [them] . . . until ordered to do otherwise."

The County's reliance on *Conservation Force v. Jewell* is misplaced.[20] Conservation Force, a nonprofit foundation, submitted a FOIA request to the United States Fish and Wildlife Service ("FWS") seeking certain records. After confirming receipt of the request, FWS forwarded it to the Department of the Interior ("DOI") for review of potentially privileged documents—a decision that FWS later acknowledged was a mistake.

---

[20] We note in passing that "[a]n opinion of a federal district court is not binding on . . . this Court, but at most might be a persuasive authority." *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. 688, 731 (2019), *aff'd*, 473 Md. 178 (2021).

When it did not receive a response within five months, Conservation Force filed suit, alleging that FWS had violated FOIA by failing to respond timely to its request. While the litigation was pending, FWS produced "partially redacted responsive records[.]" *Conservation Force*, 160 F. Supp. 3d at 200.

During an ensuing "clash on the redaction front[,]" FWS filed a motion for summary judgment, as well as an accompanying Vaughn index "as proof that . . . FOIA's enumerated [exemptions] supported the withholding of certain information." *Id.* at 200. The court denied FWS's motion as to some of the claimed exemptions, reasoning that FWS "had provided insufficient evidence to permit a ruling as to whether [those exemptions] actually applied[.]" *Id.* Consequently, the court ordered FWS either to supplement its Vaughn index or "release the challenged withheld content." *Id.* FWS chose the former option, filed a supplemental Vaughn index, and renewed its motion for summary judgment. The court granted FWS's motion and dismissed Conservation Force's complaint.

Despite the dismissal of its complaint, Conservation Force moved for attorneys' fees, arguing that "the . . . litigation caused . . . FWS to change its position and provide some of the relief sought by the suit, i.e., release of records[.]" *Id.* (cleaned up). In denying that motion, the federal district court observed that, under FOIA's fee-shifting provision, a plaintiff prevails substantially by obtaining relief either through "(1) an order of the court" ("the court-order method") or "(2) a 'voluntary or unilateral change in position by the agency,' assuming the plaintiff's claim is not insubstantial'" ("the catalyst method"). *Id.* at 201 (quoting 5 U.S.C. § 552(a)(4)(E)(ii)). *See* nn. 18-19, *supra*.

24

To prevail under the court-order method, the court explained, one must identify a court order "that constitutes judicial relief on the merits" and "change[s] . . . the legal relationship between the [parties]." *Conservation Force*, 160 F. Supp. 3d at 201 (quotation marks and citations omitted). As FWS could comply with its order by producing a Vaughn index in lieu of the withheld information, the court concluded that the order had not changed the legal relationship between the parties, and, therefore, Conservation Force was ineligible for attorneys' fees under the court-order method. *See also Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 196 (D.C. Cir. 2007) ("[A]n order compelling the production of a *Vaughn* index, without more, is not enough to make a plaintiff a 'prevailing party' sufficient to support a claim for attorney's fees.").

Turning to the catalyst method, the court cautioned that "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation[;] vague assertions of *post hoc, ergo propter hoc* are insufficient[.]"[21] *Conservation Force*, 160 F. Supp. 3d at 205 (internal quotation marks and citations omitted). Ultimately, the court explained, "the question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release[.]" *Id.* at 206. The court found no such evidence. To the contrary, the record indicated that FWS's delay in responding to the FOIA request was, at least in part, the result of its error in referring the request to DOI. As Conservation Force had not shown

---

[21] *Post hoc ergo propter hoc* ("after this, therefore resulting from it") is "[t]he logical fallacy of assuming that a causal relationship exists when acts or events are merely sequential." *Post hoc ergo propter hoc*, BLACK'S LAW DICTIONARY (12th ed. 2024).

that it prevailed substantially under either the court-order or catalyst method, the court concluded that it was ineligible for attorneys' fees.

*Conservation Force* is distinguishable readily from the present case. Although Ford attributed the *initial* delay in responding to Sugarloaf's records requests to an administrative error (perhaps comparable to the one in *Conservation Force*), any hindrances in that regard were overcome shortly after Sugarloaf filed suit. Within two months of being served with Sugarloaf's complaint, the County produced twenty responsive records and Vaughn indices describing 138 others that it *declined* to produce and continued to withhold. In contrast to *Conservation Force*, therefore, the evidence in this case "suggests an intransigence" on the part of the County "that only fell away in the face of litigation[.]" *Id.* at 206-07.

More significantly, the court order in *Conservation Force* permitted FWS to *either* release the withheld content *or* submit a supplemental Vaughn index. The fact that FWS could continue to withhold information without violating the court's order was central to the court's conclusion that Conservation Force had not "substantially prevailed" under the court-order method. Given that FWS elected to produce a Vaughn index rather than the redacted content, moreover, the court's order did not *cause* FWS to release the requested records. Here, by contrast, the circuit court's 8 June 2023 order directed categorically the County to produce the majority of the withheld records identified in the Vaughn indices, and the County complied promptly. Thus, there is a far stronger causal nexus between the litigation and the disclosure in this case than there was in *Conservation Force.*

Notwithstanding these distinctions, the County characterizes the circuit court's finding that the suit was necessary to obtain the records as having been based on "the same conclusory *post hoc* argument that [was] . . . rejected in [*Conservation Force*]." We disagree. The County was on notice of Sugarloaf's continued pursuit of the requested records after suit was filed on 24 June 2022. It clearly managed to identify the responsive documents before submitting the Vaughn indices on August 16. Nevertheless, the County withheld all but twenty of those records for nearly ten months before the court ordered their production on 8 June 2023. These facts do not show merely temporal proximity between the filing of suit and the document release. They support a reasonable inference that the County would not have produced the records at issue if Sugarloaf had not obtained a court order compelling it to do so. That order—and the County's compliance therewith—established also the requisite causal nexus between the litigation and disclosure of the requested records.[22]

Finally, although the County emphasizes that the court ruled in its favor with respect to nondisclosure of fourteen records, it does not dispute that Sugarloaf recovered "key documents." As all three of the eligibility requirements for an attorneys' fees award were satisfied in this case, we find no fault with the court's determination that Sugarloaf prevailed substantially in its MPIA action and was eligible for attorneys' fees pursuant to Gen. Prov. § 4-362(f).

---

[22] Indeed, at the hearing on Sugarloaf's attorneys' fees petition, the County's attorney acknowledged expressly that her client had "complied with [the court's] order" by producing the documents at issue.

27

## B. Alleged Underlying Legal Errors

The County asserts also that "[t]o the extent that Sugarloaf . . . prevailed . . . in the lawsuit, it did so based on legal error." Specifically, it claims that the court

> (1) erred in finding that the sufficiency of the Vaughn indices was properly before [it;]
>
> (2) erred in finding that the vast majority of the County's claimed exceptions were "discretionary"[;]
>
> (3) erred in finding that the County's Vaughn indices did not carry its burden under the MPIA[; and]
>
> (4) abused its discretion by ordering the forced disclosure of the vast majority of the withheld records without conducting an *in camera* review or allowing the County to supplement the Vaughn indices.

(Enumeration added; formatting altered.) Characterizing the County's contention as "challenging the trial court's order to release public records[,]" Sugarloaf counters that "no remedy is available on the merits since the County chose to comply with the trial court's order . . . and released the disputed documents before seeking reconsideration or noting its appeal." Accordingly, Sugarloaf "requests that [we] dismiss the County's cross-appeal as moot." In a reply brief, the County responds that its above-enumerated arguments are ripe for review because "this Court can fashion an[] adequate and effective remedy—namely, the Court can reverse the [c]ircuit [c]ourt's determination that Sugarloaf . . . is entitled to attorneys' fees."

### 1. Mootness

"[G]enerally, appellate courts do not decide . . . moot questions." *In re Karl H.*, 394 Md. 402, 410 (2006) (quotation marks and citation omitted). *See also Cottman v. State*,

28

395 Md. 729, 744 (2006) ("'[A]ppellate courts do not sit to give opinions on abstract propositions or moot questions[.]'" (quoting *State v. Ficker*, 266 Md. 500, 506-07 (1972))). A question presented on appeal is moot "'if, at the time it is before the court, there is no longer any existing controversy between the parties, so that there is no longer an effective remedy which the court can provide.'" *Syed v. Lee*, 488 Md. 537, 578 (2024) (quoting *In re S.F.*, 477 Md. 296, 318 (2022)). In other words, an issue is moot where "'past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect.'" *La Valle v. La Valle*, 432 Md. 343, 351 (2013) (quoting *Hayman v. St. Martin's Evangelical Lutheran Church*, 227 Md. 338, 343 (1962)).

The County does not dispute—nor could it do so reasonably—that any challenge to the circuit court's order to produce the previously withheld documents was mooted when it released them to Sugarloaf. Although it could have appealed from and sought a stay of the court's order, the County elected to comply promptly. As Sugarloaf possesses now and disseminated publicly the documents at issue, no judgment from this Court could have the practical effect of "putting the genie back in the bottle," and any challenge to the court's disclosure order is, therefore, moot. *Cf. Hammen v. Balt. Cnty. Police Dep't*, 373 Md. 440, 444, 451 (2003) (holding that petitioner's appeal from an order upholding the denial of his MPIA requests was moot because petitioner received and viewed the videotapes he had sought); *Am. C. L. Union Found. of Md. v. Leopold*, 223 Md. App. 97, 127 (2015) (holding

29

that the appellants' declaratory judgment claim under the MPIA was moot "because [the requested records] have been produced").

As we noted above, the County claims nevertheless "that various legal errors" culminating in the court's ruling on the merits "are ripe for resolution" because we could vacate its ensuing award of attorneys' fees. We grant that a complainant may lose his or her status as a substantially prevailing party if a judgment on the merits in his or her favor is reversed on appeal. In *Taylor, supra*, we explained: "If a party no longer has 'prevailed,' because the merits judgment in her favor has been reversed on appeal, an award of attorneys' fees that was premised on the party's prevailing party status necessarily falls with the merits judgment." 221 Md. App. at 373. It stands to reason, however, that the inverse is also true. If the underlying merits judgment in a complainant's favor is undisturbed on appeal, that complainant remains a substantially prevailing party, and, as such, continues to be eligible for attorneys' fees.[23] The critical question, therefore, is whether we should accept the County's invitation to revisit the merits of the underlying dispute with an eye toward reversing *both* the disclosure order *and* the fee award.

### 2. Attorneys' Fees Awards Are Collateral to the Merits

"[T]he consensus of Maryland appellate decisions is that, if a claim for attorney's fees derives from statute or rule, that claim is 'collateral' to the subject matter of the merits

---

[23] This assumes, of course, that the circuit court applied correctly the three-prong test for fee eligibility discussed above.

of the underlying substantive action[.]"[24] *Armstrong v. Mayor & City Council of Balt.*, 409 Md. 648, 665 n.13 (2009). *See also Accubid Excavation, Inc. v. Kennedy Contractors, Inc.*, 188 Md. App. 214, 230-31 (2009) ("[W]e have previously held in cases involving the recovery of statutorily-permitted or rules-based attorney's fees that the recovery of attorney's fees presents a matter collateral to or independent from the merits of the action." (emphasis omitted)). The collateral nature of an attorneys' fees award can affect significantly the scope of appellate review, as the following cases illustrate.

In *Blake v. Blake*, 341 Md. 326 (1996), the Supreme Court of Maryland dismissed an appeal from a judgment of absolute divorce—despite the pendency of a claim for attorneys' fees—on the ground that the appellant did not file her notice of appeal within thirty days after judgment was entered, as required by Maryland Rule 8-202(a).[25] The Court reasoned that, because the claim for attorneys' fees was collateral to the underlying action, the pendency of that claim did not deprive the judgment on the merits of its finality for purposes of appeal. *See also Larche v. Car Wholesalers, Inc.*, 80 Md. App. 322, 328 (1989)

---

[24] In contrast to cases "involving the recovery of statutorily-permitted or rules-based attorney's fees," we consider generally "fees awardable pursuant to a contract [to be] an inherent part of a breach of contract claim[.]" *Monarc Constr., Inc. v. Aris Corp.*, 188 Md. App. 377, 393 (2009). *But see Grove v. George*, 192 Md. App. 428, 436 (2010) (holding that "appellee's post-judgment request for attorney's fees was 'collateral to the main cause of action'" despite being predicated upon a contractual obligation "to pay attorney's fees to the 'prevailing party'" where "the prevailing party was the defendant and did not make a claim for breach of the contract" (citations omitted)).

[25] Rule 8-202(a) provides, in pertinent part: "Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken."

("[A] [statutory] claim for attorneys' fees . . . is collateral to the principal action so that an appeal will lie from a final judgment on the underlying claim despite the pendency of a decision on the attorneys' fees claim.").

The Supreme Court reached a similar conclusion in *Armstrong, supra*, albeit in a different procedural context. The petitioners in that case filed suit challenging a conditional use ordinance ("the ordinance") authorizing the development of a parking lot land use. In their complaint, the petitioners argued that the ordinance was passed in violation of the Maryland Open Meetings Act ("OMA").[26] As relief, they sought (1) a declaration that the ordinance was void, (2) an order enjoining "the City Council . . . from issuing any permits pursuant to [the] [o]rdinance[,]" and (3) an award of reasonable attorney's fees under the OMA. *Armstrong*, 409 Md. at 660. The circuit court determined that the OMA had been violated, but declined to declare the ordinance void as a result. It awarded the petitioners reasonable attorney's fees, but "left for subsequent determination the amount" thereof. *Id.* at 664 n.13.

The petitioners and respondents each appealed, challenging the court's refusal to void the ordinance and its award of attorney's fees, respectively. In an unreported opinion, we affirmed the court's judgment on the merits, but reversed the attorney's fees award. With respect to attorney's fees, we reasoned that "because Petitioners did not achieve the relief they sought on the merits of their claims, they may not be considered a 'prevailing'

---

[26] The OMA was codified at that time as Maryland Code (1984, 2004 Rep. Vol., 2008 Supp.), §§ 10-501 through 10-512 of the State Government Article.

party, as required under Md. Code, State Go[v't] Art. § 10-510(d)(5), and, therefore, may not be awarded counsel fees." *Id.* at 666.

The Supreme Court of Maryland vacated our decision and remanded with instructions to dismiss the appeals.[27] The Court held that enactment of intervening legislation mooted the petitioners' OMA challenge, at least insofar as it sought "to undo the approval of the parking lot," by "rendering [the] [o]rdinance . . . unnecessary as a matter of law."[28] *Id.* at 651. Although it concluded that the petitioners' challenge was moot, the Court hastened to add: "[T]his is so only insofar as their challenge seeks to undo the validity of the parking lot . . . . Whether Petitioners are entitled to attorney's fees and, if so, how much those fees should be . . . is a separate and collateral consideration that remains to be decided finally by the trial judge." *Id.* at 683-84. For reasons not here relevant, the Court reversed our holding that "[p]etitioners were not 'prevailing' parties under [the OMA], and thus did not qualify for an award of attorney's fees." *Id.* at 685. Accordingly, it concluded that the trial court "must resolve finally its general attorney's fees award." *Id.* at 696.

As is evident from the foregoing, because an award of attorneys' fees is collateral to a judgment on the merits, an appellate court can review the former even though the latter

---

[27] As a preliminary matter, the Court noted that "[t]he open question of the amount of attorney's fees does not deprive us of our jurisdiction to decide the case before us[,]" reasoning that it "is a collateral matter separate from the merits of the underlying claim[] for purposes of determining appealability[.]" *Armstrong*, 409 Md. at 664 n.13.

[28] Specifically, the Court reasoned that a recent retroactive amendment to the Zoning Code had "made it unnecessary . . . to obtain a conditional use ordinance to establish the . . . parking lot." *Armstrong*, 409 Md. at 670.

is nonjusticiable—either because the appeal was untimely or because the underlying matter has become moot. For precisely the same reason, however, appealing an award of attorneys' fees does not revive an underlying judgment that became moot or otherwise nonjusticiable. *Cf. Campbell v. Lake Hallowell Homeowners Ass'n*, 152 Md. App. 139, 148-49 (2003) (dismissing as moot an appeal from an underlying judgment, but addressing the propriety of an attorneys' fees award which was "not moot"). In other words, the collateral nature of attorneys' fees prevents a party from circumventing the mootness doctrine or other barriers to appellate review by appealing such an award in a backdoor attempt to obtain reversal of a decision on the merits of the underlying claim.

Although we are not aware of any Maryland case directly on point, we are persuaded by those federal circuit court decisions holding that, in determining whether one is a prevailing party for purposes of an attorneys' fees award, a reviewing court should consider solely the relief that was granted and disregard the merits of an underlying dispute that has been rendered moot on appeal. *See J.S. v. Westerly Sch. Dist.*, 910 F.3d 4, 10 (1st Cir. 2018) ("[W]hen the predicate issue is moot, we cannot recoup jurisdiction over the merits by ruling on a question about attorneys' fees. Therefore, . . . we must turn a blind eye to the merits of the district court's reading of the [Individuals with Disabilities Education Act], and ask only whether the district court's order rendered the parents 'prevailing parties.'" (internal citations omitted)); *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 805 (9th Cir. 2009) ("[W]hen a matter becomes moot on appeal, the court will not, and cannot, review the merits of the underlying dispute for the purpose of determining

whether an award of attorney fees was proper. That is to say, although it can consider whether the plaintiff prevailed at all, it cannot ask whether the district court's underlying decision on the merits was erroneous."); *Naekel v. Dep't of Transp.*, 884 F.2d 1378, 1379 (Fed. Cir. 1989) ("Although the government reargues the merits, a 'request for attorney's fees should not result in a second major litigation.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))); *Bishop v. Comm. on Pro. Ethics & Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1290 (8th Cir. 1982) ("In a case where the underlying action has been dismissed as moot on appeal, the propriety of an award of attorney's fees under 42 U.S.C. § 1988 turns on a determination of whether the plaintiff can be considered to have been a 'prevailing party' in the underlying action in the district court, without regard to whether we think the district court's decision on the underlying merits is correct." (internal citations omitted)); *Curtis v. Taylor*, 625 F.2d 645, 648-49 (5th Cir. 1980) ("[A] claim for attorney's fees . . . does not salvage an otherwise moot case. The district court may still determine whether the plaintiffs were the prevailing party and award attorney's fees without regard to whether or not its issuance of the injunctions was ultimately correct in our eyes." (internal citation omitted)); *Bagby v. Beal*, 606 F.2d 411, 414 (3rd Cir. 1979) ("Appellants' theory is that the district court erred in holding for appellee on her due process claims and that therefore she is not a 'prevailing party' within the meaning of § 1988. Although this argument presents an issue about the meaning of 'prevailing party,' it does not require us to look at the merits of this case and does not disturb our conclusion that this case is moot."). *See also S. All. for Clean Energy v. Duke Energy Carolinas, LLC*,

35

650 F.3d 401, 405-06 (4th Cir. 2011) ("Fee determinations are generally distinct from merits determinations. Indeed, it has been recognized that a merits determination on which a fee award is based generally cannot be revisited on appeal from the fee award." (internal citation omitted)); *Houden v. Todd*, 324 P.3d 1157, 1162 (Mont. 2014) ("The weight of federal authority suggests that review of an award of attorneys' fees does not revive an otherwise moot issue."); *Queen Emma Found. v. Tatibouet*, 236 P.3d 1236, 1239 (Haw. Ct. App. 2010) ("[W]hile an appellate court does have jurisdiction to consider whether the award of attorneys' fees and costs was proper, the merits of the underlying moot controversy will not be considered in determining whether the recipient of the attorneys' fees and costs award was the 'prevailing party.'").[29]

### 3. Conclusion

Consistent with this persuasive authority, we decline to revisit the merits of the underlying action and will not entertain the County's arguments in that regard. If the County wished to contest the court's order to produce the records at issue, it could have noted an appeal from that judgment and sought a stay. Instead, it produced promptly the

---

[29] The Texas appellate courts appear though to be fairly prolific outliers in this regard. *See, e.g.*, *State ex rel. Best v. Harper*, 562 S.W.3d 1, 7 (Tex. 2018) ("[I]f the party prevailed before the substantive claim became moot, the party's claim for attorney's fees under a prevailing-party statute remains a live controversy and *a court must consider the claim's merits to determine whether the party properly prevailed*." (emphasis added) (citing *Camarena v. Tex. Emp. Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988))). *See also C & H Nationwide, Inc. v. Norwest Bank Tex. NA*, 208 F.3d 490, 494 (5th Cir. 2000) ("[W]e can reach a now-moot substantive issue when necessary to determine whether the district court correctly awarded attorney's fees[.]").

36

documents, thereby mooting any appellate challenge and cementing ultimately Sugarloaf's status as a substantially prevailing party.

## II.

Having disposed of the County's cross-appeal, we turn to the solitary issue Sugarloaf raises in its appeal. Sugarloaf contends that the circuit court abused its discretion by awarding it only $25,000 in attorneys' fees. It advances two arguments in support of that contention. First, Sugarloaf claims that the court considered improperly the following factors in fashioning the attorneys' fees award:

> (1) "there were 14 documents that were justifiably withheld by [the County] on the grounds of either attorney-client or confidential commercial information privilege," (2) "a substantial portion of the documents produced were drafts, cover emails, and redundant in nature," (3) "[the court] ascribe[d] no evil motive to [C]ounty officials . . . ," and (4) "the citizens of Frederick County will bear the burden of an award of attorneys' fees."

Secondly, Sugarloaf asserts that the court abused its discretion by denying its supplemental petition for attorneys' fees on the ground that the petition was untimely.

With respect to Sugarloaf's first argument, the County responds that the "reduced award [wa]s . . . appropriate given the array of issues" on which "Sugarloaf . . . *did not prevail*[.]" (Emphasis retained.) The County maintains, moreover, that the four factors with which Sugarloaf takes issue "are plainly relevant to the facts and circumstances of this action[,]" and, therefore, the court did not abuse its discretion by considering them. As to the denial of Sugarloaf's supplemental petition, the County claims that, "[g]iven the significant risks to fairness and judicial economy that consideration of the supplemental petition posed, the [c]ircuit [c]ourt did not abuse its discretion when it found that the request

37

should have been presented at the [6 September 2023] hearing." (Internal quotation marks omitted.)

## A. Attorneys' Fees Entitlement & the Lodestar Approach

Where, as here, "'the court determines that the complainant has substantially prevailed, that litigant becomes eligible but not entitled to an award of reasonable attorney fees and costs.'" *Caffrey*, 370 Md. at 299 (internal quotation marks omitted) (quoting *Kline*, 64 Md. App. at 385). "Generally, the decision whether to award counsel fees to an eligible party under the MPIA rests within the sound exercise of discretion by the trial judge." *Id.* at 289. *See also Kline*, 64 Md. App. at 388 ("A decision on whether to award counsel fees to an eligible party resides in the discretion of the trial judge."). In *Kline*, we articulated the following non-exhaustive list of factors courts must consider when exercising that discretion: "(1) the benefit to the public, if any, derived from the suit; (2) the nature of the complainant's interest in the released information; and (3) whether the agency's withholding of the information had a reasonable basis in law." *Id.* at 386. *Accord Stromberg*, 395 Md. at 128; *Caffrey*, 370 Md. at 299; *Kirwan v. The Diamondback*, 352 Md. 74, 96 (1998). If, after considering these factors, a court finds that a complainant is not only eligible, but is entitled also to an attorneys' fees award, it must determine the appropriate amount.

"In a statutory fee-shifting case, courts generally employ the 'lodestar method' in calculating what attorneys' fees and costs are to be awarded."[30] *Cong. Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 503 (2011). "The starting point for determining a reasonable fee under [this] approach is to multiply the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Friolo v. Frankel*, 438 Md. 304, 319 (2014) (quotation marks and citation omitted). "'This amount is then adjusted by the court, depending on the effect of numerous external factors bearing on the litigation as a whole.'" *E. Shore Title Co. v. Ochse*, 453 Md. 303, 337 (2017) (quoting *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 333 (2010)). Those factors are set forth in Maryland Rule 2-703(f), which provides, in pertinent part[31]:

---

[30] Although we are unable to identify a Maryland authority stating specifically that the lodestar approach is applicable to attorneys' fees awarded under the MPIA, we are guided by *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1499 (D.C. Cir. 1984), where the United States Court of Appeals for the District of Columbia indicated that the approach applies to attorneys' fees awards pursuant to FOIA, writing: "In determining a fee award (after a court has concluded that an FOIA complainant is both eligible and entitled to an award), the District Court must next determine the hourly rate and the number of hours or 'lodestar award.'"

[31] In applying Maryland Rule 2-703(f), determining the reasonable rate and hours expended, on the one hand, and adjusting the product of those figures, on the other, may cause lines to become blurred. In fact, the *Hensley* Court, itself, noted: "The district court also may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (CA5 1974), though it should note that *many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate*." 461 U.S. at 434 n.9 (emphasis added). In *Friolo*, 438 Md. at 319-20, the Supreme Court of Maryland stated similarly that "the court should consider the 12 factors enumerated in *Johnson*[, 488 F.2d at 717-19]" when "multiply[ing] the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate[,]" *and then* adjust "[t]he product of that multiplication . . . upward or downward based on the results

(continued . . . )

(2) **If award permitted or required.** — . . . If the court determines that a permitted award should be made . . . , the court shall apply the standards set forth in subsection (f)(3) of this Rule and determine the amount of the award.

(3) **Factors to be considered.** — In making its determinations under subsection (f)(2) of this Rule, the court shall consider, with respect to the claims for which fee-shifting is permissible:

(A) the time and labor required;

(B) the novelty and difficulty of the questions;

(C) the skill required to perform the legal service properly;

(D) whether acceptance of the case precluded other employment by the attorney;

(E) the customary fee for similar legal services;

(F) whether the fee is fixed or contingent;

(G) any time limitations imposed by the client or the circumstances;

---

obtained—the degree of success and the level of success." (Quotation marks and citation omitted.)

Although some of the Rule 2-703(f) factors seem to apply primarily to the initial lodestar calculation, the Committee Note to Rule 2-703(f) cites *Monmouth Meadows*, 416 Md. at 333-34, where the Supreme Court of Maryland discussed the factors set forth in Rule 2-703(f) as relevant to adjusting the lodestar amount, rather than calculating it. In that case, the Court wrote: "This amount is then *adjusted* by the court, *depending on the effect of numerous external factors* bearing on the litigation as a whole. *For example, the Supreme Court has approved a list of twelve factors* to be considered in a lodestar analysis in federal court[.]" *Monmouth Meadows*, 416 Md. at 333-34 (emphasis added). In light of the Committee Note's favorable citation to *Monmouth Meadows* and given that the focus here is on Sugarloaf's degree of success (which is clearly relevant to adjusting the product of the above-described multiplication), we chose to consider the Rule 2-703(f) factors as applicable to adjusting the product of the hours reasonably expended and the reasonable hourly rate.

40

(H) the amount involved and ***the results obtained***;

(I) the experience, reputation, and ability of the attorneys;

(J) the undesirability of the case;

(K) the nature and length of the professional relationship with the client; and

(L) awards in similar cases.

Md. Rule 2-703(f)(2)-(3) (emphasis added).

These twelve factors are derived almost verbatim from those set forth by the United States Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), and adopted subsequently by the Supreme Court of the United States in *Hensley*, 461 U.S. at 430 n.3. Of the twelve factors, the *Hensley* Court characterized "the results obtained" as "crucial . . . in determining the proper amount of an award of attorney's fees[,]" *id.* at 440, particularly where "a plaintiff is deemed 'prevailing' even though he [or she] succeeded on only some of his [or her] claims for relief." *Id.* at 434. *See also Ochse v. Henry*, 216 Md. App. 439, 461 ("In the statutory fee-shifting reasonableness inquiry, . . . [t]he court must consider the award in the context of the results the plaintiff obtained."), *cert. denied*, 439 Md. 331 (2014).

In *Hensley*, the U.S. Supreme Court explained that, when adjusting the lodestar for a partially prevailing plaintiff, a trial court must first address whether the claims on which the plaintiff did not prevail "were unrelated to [those] on which he [or she] succeeded[.]" *Hensley*, 461 U.S. at 434. If so, those unrelated claims should "be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the

41

unsuccessful claim." *Id.* at 435. By contrast, where, as here, "claims for relief . . . involve a common core of facts or [are] based on related legal theories[,] . . . the [trial] court *should focus on the significance of the overall relief obtained* by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (emphasis added). The Court stressed that, when adjusting the lodestar in such cases, "the most critical factor is the degree of success obtained." *Id.* at 436.

> *Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee*. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

> *If*, on the other hand, *a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount*. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . Again, *the most critical factor is the degree of success obtained.*

*Id.* at 435-36 (emphasis added) (citation and footnote omitted). *Accord Ochse*, 216 Md. App. at 461-63. Thus, the Court held that "where the plaintiff achieved only limited success, the [trial] court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. *Accord Ochse*, 216 Md. App. at 463; *Garcia v. Foulger Pratt Dev., Inc.*, 155 Md. App. 634, 673 (2003). Finally, although the *Hensley* Court held that trial courts must weigh heavily the degree of success a plaintiff obtains when awarding attorneys' fees, it concluded ultimately that the decision to reduce

an attorneys' fees award is a discretionary one: "*There is no precise rule or formula for making these determinations. The [trial] court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.*" *Hensley*, 461 U.S. at 436-37 (emphasis added).

Maryland Courts have held similarly that, although trial courts must consider the factors enumerated in Rule 2-703(f) when fashioning an attorneys' fees award, the amount of such an award is committed ultimately to their broad discretion. *See, e.g.*, *Malin v. Mininberg*, 153 Md. App. 358, 435-36 (2003) ("[T]he trial court is vested with wide discretion in deciding whether to award counsel fees and, if so, in what amount." (quotation marks and citation omitted)). That discretion includes the assessment of a plaintiff's degree of success and corresponding adjustment to the lodestar amount. *Friolo v. Frankel*, 403 Md. 443, 461 (2008) ("[I]t is in the Circuit Court's discretion ultimately to determine [the plaintiff's] degree of success, which will be reflected in the lodestar calculus to determine the appropriate amount of attorneys' fees to award[.]"). Thus, "in cases where the plaintiff achieves less than full success on all claims, the trial court has wide discretion to reduce a fee award accordingly." *Ochse*, 216 Md. App. at 462. As these determinations are committed to the sound discretion of the trial court, we will not disturb them on appeal "unless a court's discretion was exercised arbitrarily or the judgment was clearly wrong." *E. Shore*, 453 Md. at 333 (cleaned up).

## B. The Attorneys' Fees Award

Against this doctrinal backdrop, we return to the question of whether the circuit court committed reversible error in fashioning the attorneys' fees award at issue.[32] Sugarloaf's initial petition for attorneys' fees sought an award of $48,813.62. In its written opinion and order regarding that petition, the circuit court found that "[t]he number of hours expended and the hourly fees were [both] reasonable," and that $48,813.62 in fees was therefore "customary and reasonable." The court then adjusted that initial lodestar figure downward by nearly fifty percent, awarding Sugarloaf attorneys' fees in the amount of only $25,000. As the County does not dispute the reasonableness of the hours expended or the rates charged, the narrow issue before us is whether the court erred clearly or exercised arbitrarily its discretion in adjusting downwardly the lodestar amount.

As noted above, Sugarloaf contends that the circuit court "arbitrarily reduced the original attorneys' fee request" by erroneously relying on four irrelevant factors. The first such factor was the court's finding that the County withheld properly fourteen of the requested records under the attorney-client and/or confidential commercial information privileges. According to Sugarloaf, "the fact that the County may have been justified in withholding fourteen documents does not override . . . the court's [conclusion] that the County erroneously withheld 122[.]" The court's determination, however, that the County

---

[32] The circuit court found that Sugarloaf was both eligible for and entitled to attorneys' fees. Although the County contests unsuccessfully the former determination, it does not challenge the latter. Thus, the parties agree that if Sugarloaf was eligible for attorneys' fees (which it was), it was entitled also to such an award.

withheld properly fourteen privileged documents does not *negate* its ruling with respect to the remaining records. Nevertheless, it was *relevant* in assessing Sugarloaf's degree of success in obtaining the injunctive relief it sought (to wit, an order compelling the County to produce the records responsive to its MPIA request).[33]

In adjusting the lodestar figure, the circuit court considered also the fact that "a substantial portion of the documents produced were drafts, cover emails, and redundant in nature[.]" Sugarloaf argues that "[t]his justification for reducing the award of attorneys' fees runs directly counter to the *Kline* standard of obtaining key documents and the lower court's own finding to that effect." As discussed above, whether a complainant recovers "key documents" is a binary determination essential only to whether one is *eligible* for an award of attorneys' fees. Gauging a party's degree of success, by contrast, requires a more nuanced comparison of the success attained to the relief sought. *See Project Vote/Voting for Am., Inc. v. Dickerson*, 444 F. App'x 660, 662 (4th Cir. 2011) (per curiam unpublished) ("[W]hen evaluating a plaintiff's overall success, we must compare the form and extent of the relief sought to the relief the plaintiff actually obtained.").

As Sugarloaf acknowledges, "the production of documents under the MPIA cannot be reduced to a mere numbers game." Indeed, it stands to reason that in assessing the outcome of an MPIA case, courts may consider properly the significance of the records produced ultimately relative to that of the records withheld properly. *See Hensley*, 461 U.S.

---

[33] Notably, Sugarloaf sought production of the fourteen properly withheld documents, notwithstanding the County's representations that they were protected from disclosure by the attorney-client and/or confidential commercial information privileges.

at 435 (When "a lawsuit cannot be viewed as a series of discrete claims[,] . . . *the [trial] court should focus on the significance of the overall relief obtained* by the plaintiff in relation to the hours reasonably expended on the litigation." (emphasis added)). Accordingly, we find no error in the court's consideration of the fact that the County's disclosure consisted largely of redundant or otherwise superfluous material (to wit, drafts and cover emails).[34]

In passing, we note that responding to requests under the MPIA is intended, we think, to be ideally an iterative process, in the course of which the requestor and the custodian are encouraged to work together to reduce, where appropriate, any extraneous paper that the custodian must produce (and for which the requestor must pay). *See Balt. Police Dep't v. Open Just. Balt.*, 485 Md. 605, 625 (2023). Accordingly, a court may consider, in deciding the amount of an attorneys' fee award, whether a request was overbroad or a lack of reasonable cooperation was exhibited during an appropriate effort to narrow the request. From our review of the record in the present case, the trial court did not appear to rely on either of these considerations to justify its downward adjustment of Sugarloaf's initial fee request.

Sugarloaf claims penultimately that the circuit court erred by considering the absence of an "evil motive" on the part of County officials, arguing that weighing this factor was "inconsistent . . . with . . . the court's own decision." Specifically, Sugarloaf

---

[34] We are mindful that drafts and cover emails are not necessarily gratuitous records, and can, in fact, include highly probative information. Here, however, the court did not find—nor does Sugarloaf assert—that these documents contained any such information.

refers us to the court's initial attorneys' fees order, which reads, in relevant part: "[Gen. Prov. §] 4-362(f) is to be distinguished from subsections (d)(1)-(3), which permit the court to assess actual and statutory damages where a government agency 'knowingly and willfully' fails to disclose a record that should have been disclosed to the requestor."[35] Although it claims that Gen. Prov. § 4-362(d)(1) was irrelevant to the attorneys' fees award in this case, Sugarloaf acknowledges having "included a claim under that provision . . . in its complaint[.]" Therein lies the rub.

In addition to seeking an award of attorneys' fees pursuant to Gen. Prov. § 4-362(f), Sugarloaf's complaint included a claim for "actual and statutory damages" pursuant to Gen. Prov. § 4-362(d), alleging that the County "ha[s], and continue[s] to, knowingly and willfully refuse to disclose public records to which [Sugarloaf] is entitled[.]" Sugarloaf continued to pursue that claim at least until trial, when it abandoned ostensibly the claims.[36]

---

[35] General Provisions § 4-362(d), provides, in pertinent part:

(d)(1) A defendant governmental unit is liable to the complainant for statutory damages and actual damages that the court considers appropriate if the court finds that any defendant *knowingly and willfully* failed to:

(i) disclose or fully to disclose a public record that the complainant was entitled to inspect under this title[.]

Gen. Prov. § 4-362(d)(1) (emphasis added).

[36] Initially, Sugarloaf's attorney indicated that his client abandoned its pursuit of actual damages, but persisted in its pursuit of statutory damages. During closing argument, however, counsel described the issue of whether Ford had withheld knowingly and willfully the records as a "non-issue." Finally, at the 6 September 2023 hearing on Sugarloaf's petition for attorneys' fees, Sugarloaf's attorney represented that his "side" had "waived" its claim for "an award of statutory or actual damages" at trial because "[i]t does not fit in with our theory of the case."

47

In announcing its ruling from the bench, the court found that Ford was "at least a de facto custodian of the records in question[,]" and that "his actions . . . that resulted in the effective denial of [Sugarloaf's] request *were not knowing and willful.*" (Emphasis added.) Because the absence of evidence that the County violated knowingly and willfully the MPIA was fatal to Sugarloaf's damages claim, it was relevant, albeit indirectly, to its level of success in the litigation.

Lastly, Sugarloaf takes issue with the circuit court's observation that the burden of paying the attorneys' fees award would fall on the citizens of Frederick County. Although it concedes that "the residents of the County will pay an award of attorneys' fees," Sugarloaf argues that this is so "in every single case litigated under the MPIA[.]" "It simply cannot follow[,]" Sugarloaf concludes, "that public payment of the award is relevant to whether fees should be awarded, or the amount thereof, once they have been found to be reasonably incurred[.]"

We agree with Sugarloaf that the source of funds used to pay attorneys' fees is irrelevant to the degree of success obtained by a plaintiff—or any of the other factors enumerated in Rule 2-703(f)(3), for that matter. We do not perceive, however, the court's passing reference in this regard as indicating that this fact informed its downward adjustment of the lodestar amount. Rather, we interpret the court as acknowledging simply the "unfortunate[]" reality that the award of attorneys' fees would be paid out of the public coffers.

We hold that the court neither exercised arbitrarily its discretion nor erred clearly in adjusting the lodestar amount downward. Accordingly, we affirm the amount of attorneys' fees awarded to Sugarloaf in response to its initial petition. This does not end our analysis, however, as Sugarloaf also challenges the denial of its supplemental petition for attorneys' fees.

### C. Fees-on-Fees[37]

As recounted above, Sugarloaf filed a supplemental petition for attorneys' fees on 8 September 2023—two days after the court held the hearing on its original petition. In that supplemental petition, Sugarloaf attributed the additional fees to (1) "the preparation for and attendance at the [September 6] hearing[,]" (2) "the preparation and filing of the original [attorneys' fees] [p]etition," and (3) "other matters, performed on August 9 and 10, 2023, . . . which had not . . . been invoiced as of the filing of th[at] [p]etition[.]" The petition was accompanied by a supporting affidavit executed by Sugarloaf's attorney of record and an invoice for fees that Sugarloaf incurred between 9 August and 8 September 2023. The County did not oppose or otherwise respond to Sugarloaf's supplemental

---

[37] "Fees-on-fees" refers to the fees incurred in the course of litigating an initial petition for attorneys' fees. *See, e.g.*, *Reed v. District of Columbia*, 843 F.3d 517, 522 (D.C. Cir. 2016) (defining "fees-on-fees" as "fees associated with attempting to secure the attorneys' fees and costs incurred in the underlying [litigation]").

petition. On 28 September 2023, the circuit court denied Sugarloaf's petition as untimely, reasoning: "This request should have been presented at the [6 September 2023] hearing."

Sugarloaf contends that the circuit court "abused its discretion by failing to consider the supplemental evidence of an additional $6,648 in fees incurred after the submission of the initial petition." According to Sugarloaf, because those fees "cover[ed] the preparation for and attendance at the hearing on the [original] fee petition[,] . . . [t]he total could not have been known until that hearing had concluded." Sugarloaf asserts also that because "counsel filed the supplement just two days after the hearing was held, but twenty days before the trial court issued its ruling[,] . . . the court had plenty of time to consider the supplement and include the additional amount."

The County responds that it would have been "unjust" for the court to require it to "expend[] [additional] time and resources to analyze and respond to" the supplemental petition "less than two weeks after the original . . . was submitted." It claims also that "because this supplemental fee petition was filed two days *after* the hearing on attorneys' fees, the County did not have . . . the opportunity to present argument or cross-examine Sugarloaf['s] . . . witnesses regarding the propriety of the supplemental petition." (Emphasis retained.)[38] "Given the significant risks to fairness and judicial economy that

---

[38] The County could have requested a hearing in an opposition to Sugarloaf's supplemental petition, thereby affording it an "opportunity to present argument or cross-examine Sugarloaf['s] . . . witnesses[.]" The County declined to file an opposition and did not request otherwise a hearing.

consideration of the supplemental petition posed," the County concludes, "the [c]ircuit [c]ourt did not abuse its discretion[.]"

We review the denial of an attorneys' fees award for abuse of discretion.[39] *See Monmouth Meadows*, 416 Md. at 332 ("We review a trial court's award of attorneys' fees under an abuse of discretion standard."). "A failure to exercise this discretion, or . . . failure to consider . . . relevant circumstances and factors of a specific case, is, itself, an abuse of discretion." *Cagle v. State*, 462 Md. 67, 75 (2018) (cleaned up). Moreover, "trial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature." *Wilson-X v. Dep't of Hum. Res.*, 403 Md. 667, 675 (2008).

The circuit court denied Sugarloaf's supplemental attorneys' fees petition exclusively on the grounds that it did not request fees-on-fees at the hearing on its original petition. Although perhaps the better practice is for parties to alert the court that they will be seeking also such fees in their initial petition or at the hearing thereon, we are not aware of any rule requiring expressly that they do so.[40] The record does not reflect, moreover,

---

[39] The standard applies regardless of whether the denial was of a claim for fees-on-fees. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014) ("This court reviews a district court's denial of fees on fees for an abuse of discretion."). *See also Friolo*, 403 Md. at 460 ("While this Court can locate no Maryland or Fourth Circuit authority specially applying *Hensley* to request[s] for fees-on-fees, the Fourth Circuit has held that the determination of an appropriate award of fees-on-fees is within the district court's discretion." (cleaned up)).

[40] Maryland Rule 2-703(b) provides:

(continued . . . )

that the court elected to establish "time schedules for the presentation of evidence and argument on issues relating to a party's entitlement to an [attorneys' fees] award and the amount thereof[,]" as permitted by Maryland Rule 2-703(d)(3). Absent any such rule or order, Sugarloaf's delay in making its supplemental attorneys' fees request was reasonable in view of the fact that the total amount of fees-on-fees incurred remained an open question until the 6 September 2023 hearing concluded. We hold that the court abused its discretion by denying the supplemental petition based exclusively on Sugarloaf's failure to raise it at the September 6 hearing on the original petition. In so doing, the court failed to consider the requisite factors set forth in *Kline*, 64 Md. App. at 386, and adopted by the Maryland Supreme Court in *Stromberg*, 395 Md. at 128 (holding that in exercising its discretion to award or deny attorneys' fees, "a court *must consider* at least three factors: (1) the benefit to the public, if any, derived from the suit; (2) the nature of the complainant's interest in the released information; and (3) whether the agency's withholding of the information had a reasonable basis in law" (emphasis added)). Accordingly, we will vacate the denial of Sugarloaf's supplemental petition for attorneys' fees and remand for reconsideration of it. *Cf. Barufaldi v. Ocean City, Chamber of Com., Inc.*, 196 Md. App. 1, 36 (2010) (vacating

---

A party who seeks attorneys' fees from another party pursuant to this Rule shall include a claim for such fees in the party's initial pleading or, if the grounds for such a claim arise after the initial pleading is filed, in an amended pleading filed promptly after the grounds for the claim arose.

an order denying the plaintiff's motion for attorneys' fees because it failed "to set forth

particular circumstances militating against any award of fees"), *aff'd*, 434 Md. 381 (2013).

> **ORDER DENYING SUGARLOAF ALLIANCE'S SUPPLEMENTAL PETITION FOR ATTORNEYS' FEES VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS ON THAT MATTER, CONSISTENT WITH THIS OPINION. JUDGMENTS OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED OTHERWISE. COSTS TO BE PAID 25% BY APPELLANT/CROSS-APPELLEE AND 75% BY APPELLEE/CROSS-APPELLANT.**